**HEBRON PUBLIC SCHOOL DISTRICT NO. 13 OF MORTON COUNTY, State of North Dakota, Appellee,**

**v.**

**UNITED STATES GYPSUM COMPANY, Appellant.**

**Civ. No. 900415.**

Supreme Court of North Dakota.

Sept. 17, 1991.

Daniel A. Speights, of Speights & Runyan, Hampton, S.C., Steven C. Lian (appearance), of Farhart, Lian, Maxson, How-ard, Sorensen & Louser, Minot, and Jon M. Arntson (appearance), of Arntson & Stewart, Fargo, for appellee.

Thomas B. Kenworthy, of Morgan, Lewis & Bockius, Philadelphia, Pa., and Wickham Corwin (appearance), of Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for appellant.

VANDE WALLE, Justice.

This case comes to us on certified questions of law from the United States Court of Appeals for the Eighth Circuit pursuant to Rule 47, N.D.R.App.P.

The Court of Appeals certified the following questions of law:

"(1) Whether, for purposes of N.D.Cent.Code § 28–01–16(1) (Cum.Supp. 1989), a cause of action, or claim for relief, does not accrue until the aggrieved party discovers the facts which constitute the basis for its cause of action or claim for relief.

"(2) Whether N.D.Cent.Code § 28–01–44 (Cum.Supp.1989) applies to a manufacturer of building materials used in an improvement to real property."

We answer the first certified question in the affirmative, and the second in the negative.

Pursuant to Rule 47(c)(2), N.D.R.App.P., the Court of Appeals provided the following statement of the relevant facts:

"In 1959 and 1963 an acoustical ceiling plaster manufactured by United States Gypsum Co. (USG) was installed on the ceiling of a school building addition in Hebron Public School District No. 13 (Hebron). The acoustical ceiling plaster manufactured by USG had been specified by the architect hired by Hebron and installed by general and sub-contractors. Hebron had no communications with USG about the specification or installation of the acoustical ceiling plaster. USG had no contacts with Hebron and had no knowledge about the Hebron school addition project.

"In August 1983 Hebron tested the school building ceiling and discovered asbestos. In 1986, some 23 years after the

acoustical ceiling plaster had been installed, Hebron filed this action in federal district court against USG to recover the costs of removing the asbestos-containing acoustical ceiling plaster and punitive damages. In response USG filed a motion for summary judgment. First, USG asserted the action was time-barred under N.D.Cent.Code § 28–01–16(1) because North Dakota applies the discovery rule for accrual only to causes of action alleging fraud. USG also asserted the action was time-barred, whether the cause of action accrued at the time of installation in 1963 or when asbestos was discovered in 1983, because USG, as a manufacturer of building materials used in an improvement to real property, was protected by N.D.Cent.Code § 28–01–44. The district court denied USG's motion for summary judgment. The case was tried to a jury, which found in favor of Hebron and awarded Hebron compensatory and punitive damages. This appeal followed."

■ Section 28–01–16, N.D.C.C., (Cum. Supp.1989) provides in part:

"The following actions must be commenced within six years after the claim for relief has accrued:

"1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104.

\*     \*     \*     \*     \*     \*

"6. An action for relief on the ground of fraud in all cases both at law and in equity, the claim for relief in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

The Legislature has not defined when a claim for relief accrues for purposes of commencing the running of the six-year limitations period. In the absence of such a definition it is a judicial function to determine when a cause of action accrues. *Harig v. Johns–Manville Products Corp.,* 284 Md. 70, 394 A.2d 299 (1978).

Earlier codified as Code of Civil Procedure § 54, Revised Codes of the Territory of Dakota (1877), what is now codified as

§ 28–01–16, N.D.C.C., was derived from New York Code of Procedure § 91 (1848). *Roether v. National Union Fire Ins. Co.,* 51 N.D. 634, 200 N.W. 818 (1924). Relying on *Liberty Mut. Ins. Co. v. Sheila–Lynn, Inc.,* 185 Misc. 689, 57 N.Y.S.2d 707 (App. Term 1945), United States Gypsum Company (Gypsum) contends that no discovery rule is applicable to § 28–01–16(1), N.D.C.C. The court in *Liberty* held that the statute of limitations barred a suit brought more than six years after the sale of the merchandise involved, after stating:

"What is the time of accrual of a cause of action for a breach of warranty? The traditional doctrine is that a cause of action for a breach of warranty of quality and fitness normally accrues at the time of the sale, notwithstanding the fact that the purchaser may not then be aware of the existence of any cause of action. Williston on Sales, sec. 212–a. 'Inability to ascertain the quality or condition of property warranted to be, at the time of the sale, a particular quality or in a certain condition, has never been allowed to change the rule as to the time when a right of action for a breach of the warranty occurs.' Allen v. Todd, 6 Lans. 222, 224." 57 N.Y.S.2d at 710.

The court concluded that the application of a discovery rule "seems untenable in the light of the authorities in this state." 57 N.Y.S.2d at 711. That conclusion has not changed to this day. "[T]he New York Court of Appeals has steadfastly declined to alter the traditional New York rule that the statute of limitations commences to run when the cause of action accrues, even though the plaintiff is unaware that he has a cause of action." *Practice Commentaries,* CPLR § 203, p. 140 (1990).

Other authorities agree with the New York position. "The statute of limitations begins to run when there is a complete and present cause of action.... [I]gnorance of a cause of action does not prevent the running of the statute of limitations unless there has been fraudulent concealment on the part of those invoking the statute." *Hunter v. Connelly,* 247 Ark. 486, 446

S.W.2d 654, 657 (1969). 43 Cal.Jur.3d, *Limitation of Actions* § 22 (1978), states:

"The code provides that an action must be commenced within the prescribed period 'after the cause of action shall have accrued.' This is an expression of the general rule that the statute of limitations does not begin to run until the cause of action accrues that is, until an action can be maintained on the cause of action. In other words, the statute of limitations is ordinarily set in motion at the time of the act giving rise to the cause of action, not at the time of discovery of the act or its perpetrator."

"In the absence of fraud, misrepresentation, or concealment, even ignorance of the facts constituting a cause of action does not ordinarily prevent the running of the statute of limitations." *Id.*, at § 140. "[T]he majority of the courts have adopted as a general rule the view that limitations begin to run from the date of the alleged wrong and not from the date the alleged wrong is discovered by the plaintiff." 51 Am.Jur.2d, *Limitation of Actions*, § 146 (1970). *See also*, 54 C.J.S., *Limitations of Actions* § 87a (1987).

Other courts have adopted exceptions to the general rule and have applied the discovery rule in certain cases. "[U]nder the so-called 'blameless ignorance' doctrine the statute of limitations has been held to run only upon discovery of the fact of the invasion of a right which will support a cause of action." 51 Am.Jur.2d, *Limitation of Actions* § 146 (1970).

"Initially, the [discovery] rule was applied to malpractice actions, but subsequent decisions have gone much further and have acknowledged the relevance of the doctrine whenever equity and justice have seemed to call for its application. The purpose of permitting a discovery rule to be applied to a statute of limitations is based on the logic of the matter; limitations should not bar a claimant before he has a reasonable basis for believing he has a claim. In situations in which the plaintiff is unaware that his legal rights have been infringed, he cannot be said to be sleeping on his rights.

\*　　\*　　\*　　\*　　\*　　\*

"The discovery rule applies only in relation to an accrual period of limitations and not to a period of limitations based upon a fixed objective event.

\*　　\*　　\*　　\*　　\*　　\*

"Some jurisdictions have adopted the 'capable of ascertainment' test for determining when the period of limitations begins to run; when the fact of damage becomes capable of ascertainment, the statute of limitation is put in motion." 54 C.J.S., *Limitations of Actions* § 87a (1987).

California courts, construing a statute of limitations that, like § 28–01–16, N.D.C.C., and the New York statute, CPLR § 203, commences to run when a cause of action has "accrued," have recognized a number of exceptions to the general rule and have applied the discovery rule in a variety of cases. In *April Enterprises, Inc. v. KTTV*, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 437 (1983), the court held that "the discovery rule may be applied to breaches [of contract] which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." The court said: "[T]he discovery rule has replaced the date-of-injury accrual rule in a growing number of actions in California. Indeed, one commentator has suggested the ever-expanding number of exceptions to what is stated as the general rule, threatens to 'swallow' that rule entirely." 195 Cal.Rptr. at 434. The court noted that the discovery rule "avoids dismissing a suit on grounds of limitation when a plaintiff is blamelessly ignorant of his cause of action." 195 Cal.Rptr. at 433. The court (195 Cal.Rptr. at 435) also recognized that "inability to recognize and inability to observe the injury—provide the primary rationale for the growing number of judicial decisions" applying the discovery rule and said:

"A common thread seems to run through all the types of actions where courts have applied the discovery rule.

The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect. In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance."

195 Cal.Rptr. at 436. "[A] plaintiff's cause of action for property damage caused by latent construction defects accrues 'from the point in time when plaintiffs became aware of defendant's negligence as a cause [of damage to the property], or could have become so aware through the exercise of reasonable diligence.' (Citation omitted.)" *Allen v. Sundean,* 137 Cal.App.3d 216, 186 Cal.Rptr. 863, 866 (1982). The general rule "has not been applied when it would simply be unjust to deprive a litigant of a cause of action before that party has become aware he has been injured." *Sherman v. Lloyd,* 181 Cal.App.3d 693, 226 Cal.Rptr. 495, 498 (1986).

In holding that the discovery rule applied in an action alleging property damage due to asbestos contamination, the Vermont Supreme Court said that the views underlying application of a discovery rule "are especially persuasive in suits to recover the costs of removing asbestos, a material used extensively in construction before its dangers fully came to light—or at least before manufacturers warned purchasers of its hazards." *University of Vermont v. W.R. Grace & Co.,* 152 Vt. 287, 565 A.2d 1354, 1357 (1989). The Maryland Court of Appeals has held the discovery rule "to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677, 680 (1981). "The general rule applicable to federal statutes of limitations is that the limi-

tation period begins to run when the claimant discovers or in the exercise of reasonable diligence should have discovered the acts constituting the alleged violation." 54 C.J.S., *Limitations of Actions* § 87a (1987).

In *Osland v. Osland,* 442 N.W.2d 907, 908 (N.D.1989), although we applied the discovery rule, we observed: "Generally, the statute of limitations commences to run from the commission of a wrongful act giving rise to the cause of action." We have, however, applied the discovery rule in a number of other actions.

In *Iverson v. Lancaster,* 158 N.W.2d 507 (N.D.1968), a medical malpractice action, this court construed § 28–01–18(3), N.D.C.C., which at that time provided:

"The following actions must be commenced within two years after the cause of action has accrued:

\*     \*     \*     \*     \*     \*

"3. An action for the recovery of damages resulting from malpractice...."

This court, for the first time, applied the discovery rule:

"After studying the various approaches taken by the courts, the recent trend of decisions to depart from the 'general rule,' the indefinite language of our statute, and our belief that justice is best served when claims are adjudicated on their merits, we conclude that the best rule is that the limitation period commences to run against a malpractice action from the time the act of malpractice with resulting injury is, or by reasonable diligence could be, discovered."

*Iverson, supra,* 158 N.W.2d at 510. We quoted the following language in *Berry v. Branner,* 245 Or. 307, 421 P.2d 996, 998–999 (1966), and said that it accorded with our view:

"The objective of a statutory limitation on the time within which an action may be brought is, in malpractice cases, the protection of medical practitioners from the assertion of stale claims. We do not believe the legislature intended to limit patients asserting malpractice claims,

who by the very nature of the treatment had no way of immediately ascertaining their injury, to the same overall period of time that is allowed for bringing other tort actions that are normally immediately ascertainable upon commission of the wrong. The protection of the medical profession from stale claims does not require such a harsh rule. The mischief the statute was intended to remedy was delay in the assertion of a legal right by one who had slumbered for the statutory period during which process was within his reach."

*Iverson, supra*, 158 N.W.2d at 511. Since *Iverson* was decided, we have held or suggested that the discovery rule was applicable in a number of other medical malpractice cases [*Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133 (N.D.1990); *Froysland v. Altenburg*, 439 N.W.2d 797 (N.D.1989); *Anderson v. Shook*, 333 N.W.2d 708 (N.D.1983)], legal malpractice cases [*Herzog v. Yuill*, 399 N.W.2d 287 (N.D.1987); *Wall v. Lewis*, 393 N.W.2d 758 (N.D.1986); *Binstock v. Tschider*, 374 N.W.2d 81 (N.D.1985); *Wall v. Lewis*, 366 N.W.2d 471 (N.D.1985); *Phillips Fur and Wool Co. v. Bailey*, 340 N.W.2d 448 (N.D.1983); *Johnson v. Haugland*, 303 N.W.2d 533 (N.D.1981)], assault and battery action based on sexual abuse when the plaintiff was a minor [*Osland v. Osland, supra*], actions involving asbestos, drugs, and medical products [suggested in *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535 (N.D.1990), an action involving a perceptible personal injury and, thus, governed by the general time-of-injury rule], "tort by negligence" [*Sylling v. Agsco*, 171 N.W.2d 825, 828 (N.D.1969)], reformation of a written instrument on the ground of mutual mistake [*Ell v. Ell*, 295 N.W.2d 143 (N.D.1980)]; and reformation of a deed [*Wehner v. Schroeder*, 335 N.W.2d 563 (N.D.1983)].

The opening language in the statutes of limitation involved in all of the foregoing decisions of this court is the same: "The following actions must be commenced within ... years after the claim for relief [or cause of action] has accrued." We perceive no principled basis upon which to distinguish this action to recover the costs of removing asbestos from a building from many of the cases in which this court has already applied a discovery rule.

Nevertheless, Gypsum contends: "The Enactment Of N.D.C.C. § 28–01–24 Reflects A Legislative Recognition That There Is No Generally Applicable Discovery Rule." Section 28–01–24, N.D.C.C., provides:

"When, by fraud or fraudulent concealment, a party against whom a claim for relief exists prevents the person in whose favor such claim for relief exists from obtaining knowledge thereof, the latter may commence an action within one year from the time the claim for relief is discovered by him or might have been discovered by him in the exercise of diligence. Such fraud or fraudulent concealment must be established to the satisfaction of the court or jury, as the case may be, by a fair preponderance of the evidence."

Gypsum argues: "If causes of action generally did not accrue until discovery, the enactment of § 28–01–24 would have been an idle act." *See also*, § 28–01–16(6), N.D.C.C., which provides that a claim for relief in a fraud case is "not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud," and *Phoenix Assur. Co. of Canada v. Runck*, 366 N.W.2d 788, 791 (N.D.1985), where we said, in dicta: "Unlike the other actions listed in § 28–01–16, N.D.C.C., a cause of action on the ground of fraud does not accrue until the aggrieved party discovers the facts constituting the fraud."

We recognize the strength of this argument and might be persuaded by it if we were writing on a clean slate. However, because of the range of our previous decisions applying a discovery rule in other actions in which such an argument would have been equally persuasive and in light of legislation incorporating discovery rules in other statutes of limitations, we decline to now hold that a discovery rule is not applicable to this action under § 28–01–16(1), N.D.C.C., to recover the costs of removing asbestos-containing acoustical ceiling plaster. To retreat to the constrictive

logic Gypsum would have us now employ would be contrary to the current concept of the purpose of statutes of limitation apparent from decisions in other jurisdictions and as demonstrated by the previous decisions of this court and recent legislative enactments.

The Legislature has incorporated a discovery rule in a number of statutes of limitation. In 1965, the Legislature enacted § 41–02–104(2) (U.C.C. § 2–725), N.D.C.C., providing a discovery rule for a breach of warranty of future performance in contracts for sale:

"2. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Since *Iverson* was decided, the Legislature has incorporated a discovery rule in § 28–01–18(3), (4), N.D.C.C.,[1] for medical malpractice; § 28–01–22.1, N.D.C.C.,[2] for actions against the state; and, significantly, § 28–01.1–02(4), (5), N.D.C.C.,[3] for personal injury and property damage actions allegedly stemming from asbestos.

1. "28–01–18. *Actions having two-year limitations.* The following actions must be commenced within two years after the claim for relief has accrued:

\* \* \* \* \* \*

"3. An action for the recovery of damages resulting from malpractice; provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital. This limitation is subject to the provisions of section 28–01–25.

"4. An action for injuries done to the person of another, when death ensues from such injuries, and the claim for relief shall be deemed to have accrued at the time of the death of the party injured; provided, however, that when death ensues as the result of malpractice, the claim for relief is deemed to have accrued at the time of the discovery of the malpractice. However, the limitation will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or hospital."

This statute may reflect a legislative presumption that the discovery rule determines when a cause of action accrues except in those instances in which the Legislature specifies that the discovery rule is not applicable. The presumption that the discovery rule applies except where the Legislature specifies otherwise is consistent with the perception that the determination as to when a cause of action accrues is a judicial function in the absence of legislative definition of that term.

2. "28–01–22.1. *Actions against state—Limitation.* When not otherwise specifically provided by law, an action against the state or its employees and officials acting within the scope of their employment or office must be commenced within three years after the claim for relief has accrued. For purposes of this section, the claim for relief is deemed to have accrued at the time it is discovered or might have been discovered in the exercise of reasonable diligence. This may not be construed as a waiver of immunity."

3. "28–01.1–02. *Statute of limitation.*

"1. There shall be no recovery of damages for personal injury, death, or damage to property caused by a defective product, except as provided in subsections 4 and 5, unless the injury, death, or damage occurred within ten years of the date of initial purchase for use or consumption, or within eleven years of the date of manufacture of a product, where that action is based upon, or arises out of, any of the following:

"a. Breach of any implied warranties.

"b. Defects in design, inspection, testing, or manufacture.

"c. Failure to warn.

"d. Failure to properly instruct in the use of a product.

\* \* \* \* \* \*

"4. Any action to recover damages based on injury allegedly resulting from exposure to asbestos composed of chrysotile, amosite, crocidolite, tremolite anthrophyllite, actinolite, or any combination thereof, shall be commenced within three years after the injured person has been informed of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos as described herein, or within three years after the discovery of facts which would reasonably lead to such discovery, whichever is earlier. No action commenced under this subsection based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective con-

In *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n,* 337 N.W.2d 427, 431–432 (N.D.1983), we said:

"Even though this statute went into effect 1 July 1981 and is not retroactive, it contains a clear sense of direction we cannot ignore.... While we may not and do not apply NDCC § 42–04–02 retroactively and directly to this situation, nevertheless in determining what legal concept or principle of law should be applied in North Dakota, we can take a sense of direction from the enactment."

*See also Hopkins v. McBane,* 427 N.W.2d 85, 95–96 (N.D.1988) (VandeWalle, J., concurring specially):

"Ordinarily I believe the Legislature should enact legislation if there is to be a substantial change in our law.... Although this statute, ..., does not govern the case before us, I see no purpose in adhering to our previous case law in this instance in view of the fact that after July 8, 1987, the effective date of the legislation, such damages may be recovered. The policy reasons for deferring to the Legislature have been satisfied and the Legislature has decided damages for mental anguish and loss of society, comfort, and companionship are recoverable elements in wrongful-death actions."

While none of the discovery rules incorporated into statutes of limitation by the Legislature governs this case, "we can take a sense of direction from [their] enactment."

*Jerry Harmon Motors, Inc.,* 337 N.W.2d at 432.

We conclude that for purposes of § 28–01–16(1), N.D.C.C., (Cum.Supp.1989), a cause of action, or claim for relief does not accrue until the aggrieved party discovers the facts which constitute the basis for its cause of action or claim for relief, and we answer the first certified question in the affirmative.

■ The second certified question asks whether the statute of repose contained in § 28–01–44, N.D.C.C., applies to a manufacturer of building materials used in an improvement to real property. In *Vantage, Inc. v. Carrier Corp.,* 467 N.W.2d 446 (N.D.1991), we recently dealt with a faulty rooftop furnace that caused a fire. We held that Carrier was not protected by § 28–01–44, N.D.C.C.:[4]

"In this case, Carrier designed and manufactured the rooftop furnace, which was an assembly line product placed on the roof of the building. Carrier was not engaged in 'performing or furnishing the design, planning, supervision, or observation of construction, or construction of ... an improvement [to real property]' within the meaning of Section 28–01–44, N.D.C.C. The rationale in *Bellemare [v. Gateway Builders, Inc.,* 420 N.W.2d 733 (N.D.1988) ] indicates that that statute was not intended to cover manufacturers of products like Carrier."

467 N.W.2d at 450–451. At oral argument, counsel for Gypsum stated that *Vantage,*

dition unreasonably dangerous to the buyer, user, or consumer unless such seller is also the manufacturer of such product or the manufacturer of the part thereof claimed to be defective. Nothing in this subsection shall be construed to permit an action to be brought based on an injury described in this subsection discovered more than two years prior to July 1, 1983.
"5. Any action to recover damages based on injury to property allegedly resulting from the presence of products containing asbestos fibers of any type must be commenced within six years of the date upon which the owner of that property knew or should have known of facts giving rise to the cause of action."

4.    *"28–01–44. Limitation of action—Person submitting plans for improvements to real estate.*

"1. No action, whether in contract, oral or written, in tort or otherwise, to recover damages:
   "a. For any deficiency in the design, planning, supervision, or observation of construction or construction of an improvement to real property;
   "b. For injury to property, real or personal, arising out of any such deficiency; or
   "c. For injury to the person or for wrongful death arising out of any such deficiency,
"may be brought against any person performing or furnishing the design, planning, supervision, or observation of construction, or construction of such an improvement more than ten years after substantial completion of such an improvement...."

*Inc. v. Carrier Corp., supra,* "probably has addressed" the second certified question and did not present any oral argument on the second certified question. We agree with counsel's assessment, and, without further discussion, answer the second certified question in the negative. We conclude that § 28–01–44, N.D.C.C., (Cum.Supp. 1989) does not apply to a manufacturer of building materials used in an improvement to real property.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.