**BASF CORPORATION, Plaintiff and Appellant,**

v.

**Darlene SYMINGTON, next friend or guardian ad litem for Darci Symington, an incompetent, Defendant and Appellee.**

Civ. No. 930146.

Supreme Court of North Dakota.

Feb. 23, 1994.

Stephen W. Plambeck, of Nilles, Hansen & Davies, Ltd., Fargo, for plaintiff and appellant.

Craig R. Campbell (appearance), of Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, MN, and Robert S. Bogard, of Schlichter, Bogard & Denton, St. Louis, MO, for defendant and appellee.

VANDE WALLE, Chief Justice.

This case comes to us on certified questions of law from the United States District Court, Southeastern Division for the District of North Dakota, under Rule 47, N.D.R.App.P.

The Federal district court certified the following questions:

"1. Does the State of North Dakota's statutory time for commencement of action limitation and its judicial appli-

cation of the 'discovery rule' operate to time-bar the cause of action of an incompetent plaintiff who, since shortly after her birth 26 years ago, suffered and continues to suffer, from a severe mental disability which appears to have been caused by a substance manufactured and marketed by the defendant.

"2. Is the knowledge of an incompetent's natural parent and guardian imputed to the incompetent for the purposes of applying the discovery rule and the relevant statute of limitation to the incompetent's cause of action."

Our answer to the first question is that fact findings not yet made by the Federal district court will determine whether the cause of action in this case is barred under our interpretation of the applicable statutes. We answer the second question in the negative.

Under Rule 47(c)(2), N.D.R.App.P., the Federal district court submitted the following statement of relevant facts:

"Darci Symington, daughter of Darlene Symington, was born at the Pembina Memorial Hospital in Cavalier, North Dakota, on July 19, 1966. During Darci's postnatal stay at the hospital, the chemical Loxene, manufactured by a predecessor of BASF, was used by the hospital in the laundering of diapers and linens. Defendant alleges that contact with this chemical caused Darci Symington to become permanently mentally retarded.

"Shortly after birth, Darci became seriously ill. She was transferred to a hospital in Grand Forks, North Dakota, where her condition appeared to improve. As Darci grew older her disability became clearly apparent. Darci Symington is currently 26 years old. She is severely mentally retarded requiring constant care, supervision, and institutional care. The prognosis is the disability will remain for the rest of her life.

"Several infants born at the Cavalier Hospital, during the same time period as Darci, experienced the same 'strange illness.' One of them died. Darci's mother, Darlene Symington, had knowledge within five years of Darci's birth, the retardation may have been linked to Loxene exposure. A North Dakota State Health Department Medical Doctor's report, of which Darlene Symington had knowledge, issued in November 1966, implicated Loxene as a probable cause of the illness reported at the Cavalier Hospital. From the record as developed, it can be stated as a matter of law that Darci has never personally been cognizant of the nature of her disability or the cause of it. On the 19th of January 1987, Darlene Symington was appointed Darci's legal guardian. At the time of Darci's birth Darlene and Darci Symington were, and continue to be, residents of North Dakota."

■ Product liability tort actions, whether based upon negligence or strict liability, are subject to the six year statute of limitations under Section 28–01–16(5), N.D.C.C. *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535 (N.D. 1990). There is apparently no dispute between the parties that the six-year limitations period under this statute applies. The dispute in this case about the appropriate limitations period stems from a disagreement as to the proper interpretation and application of our law extending the limitations period for disabilities:

"*28–01–25. Disabilities extend limitations on actions generally—Exceptions.* If a person who is entitled to bring an action other than for the recovery of real property, or for a penalty or forfeiture, or against a sheriff or other officer for an escape is:

"1. Under the age of eighteen years;

"2. Insane; or

"3. Imprisoned on a criminal charge or in execution under the sentence of a criminal court for a term less than for life,

"at the time the claim for relief accrues, the time of such disability is not a part of the time limited for the commencement of the action. However, the period within which the action must be brought cannot be extended more than five years by any such disability except infancy, nor can it be extended in any case longer than one year after the disability ceases. In cases alleg-

ing professional malpractice, the extension of the limitation due to infancy is limited to twelve years."

■■■ Under Section 28–01–25, N.D.C.C., if a claim for relief accrues when the claimant is less than 18 years old,[1] the period of minority is not part of the time limited for bringing the claim. *Besette v. Enderlin School Dist. No. 22*, 288 N.W.2d 67 (N.D. 1980). Likewise, if the claimant is insane when the claim for relief accrues, the time limited for bringing the claim does not include the period of insanity.[2]

■■■ Section 28–01–25, N.D.C.C., places definite restrictions on the extension of the limitations period for either of these disabilities. For mental incompetency the limitations period "cannot be extended more than five years." For either infancy or mental incompetency the extension of the limitations period also cannot be longer than one year after the disability ceases. However, for purposes of applying the extensions, the statute does not define when a claim for relief accrues. In the absence of a definition, it is a judicial function to determine when a cause of action accrues. *Hebron Public School v. U.S. Gypsum Co.*, 475 N.W.2d 120 (N.D. 1991).

■■■ Ordinarily, the statute of limitations commences to run from the commission of a wrongful act giving rise to the cause of action. *See Fox v. Higgins*, 149 N.W.2d 369 (N.D.), *cert. denied*, 389 U.S. 873, 88 S.Ct. 160, 19 L.Ed.2d 153 (1967). In a products liability case, the general rule is that the cause of action accrues "at the time of injury." *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535 (N.D.1990). However, when a case involves a latent injury, which only manifests itself through the passage of time, we apply the "discovery rule" for determining when the cause of action accrues. *Id.; see also Froysland v. Altenburg*, 439 N.W.2d 797 (N.D.1989). Under the discovery rule, the action does not accrue and the limitations period does not begin to run until the claimant knows, or with reasonable diligence should know, that a potential claim exists. *Osland v. Osland*, 442 N.W.2d 907 (N.D. 1989).

■■■ To answer the first certified question, it is necessary to resolve when a person suffering from disabilities of mental incompetency and minority is deemed to know that a potential claim exists, resulting in accrual of the claim for relief under Section 28–01–25, N.D.C.C. In construing this statute, we are guided by several relevant rules of statutory interpretation. Our primary objective in interpreting a statute is to ascertain the intent of the Legislature. *Zuger v. North Dakota Insurance Guaranty Association*, 494 N.W.2d 135 (N.D.1992). We determine the intent of the Legislature by comparing every section of a statute as a part of the whole. *Johnson v. N.D. Workers' Compensation Bureau*, 484 N.W.2d 292 (N.D.1992). We give meaning, if possible, to every word, phrase, and sentence. *Flermoen v. N.D. Workers Compensation Bureau*, 470 N.W.2d 220 (N.D.1991).

■■■ In applying the discovery rule we have used an objective standard for the knowledge requirement; we focus upon whether the claimant has been apprised of facts which would place a reasonable person on notice that a potential claim exists, without regard to the claimant's subjective beliefs. *Biesterfeld v. Asbestos Corp. of America*, 467 N.W.2d 730 (N.D.1991). To give meaning to all parts of Section 28–01–25,

1. Section 28–01–25, N.D.C.C., was amended in 1973 as part of a comprehensive legislative bill changing the age of majority from "twenty-one years" to "eighteen years." S.L. 1973, Ch. 120, § 31. Darci's attorney argues that because Darci was born before this section was amended, the age of 21, not 18, should be used in applying this section to her case. The federal district court did not certify this issue to us.

2. California, a state having a similar disability extension statute with a common historical origination, has construed the term "insane" to mean a person having an unsound mind or having a mental condition rendering that person incapable of comprehending legal rights. *See Feeley v. Southern Pacific Transportation Co.*, 234 Cal. App.3d 949, 285 Cal.Rptr. 666 (1991); *Gottesman v. Simon*, 169 Cal.App.2d 494, 337 P.2d 906 (1959). We agree with California that this is an appropriate and useful definition of the term "insane" for use under these limitations statutes. Herein, we use the phrase "mentally incompetent" interchangeably with the term insanity.

N.D.C.C., we believe it is necessary to also use an objective standard for determining what facts a claimant with disabilities is deemed to know. So the claim for relief accrues when a reasonable person, not suffering from disabilities, would have been cognizant of facts placing a reasonable person on notice that a potential claim exists. That is when the cause of action accrues, and the extension of time for disabilities under Section 28–01–25, N.D.C.C., is applied from that date.

Darci's attorney argues that the claim for relief should not accrue until the claimant's disabilities of minority and mental incompetency cease to exist, because until then the claimant cannot know or comprehend her legal rights. In essence, Darci's attorney is arguing that we should apply a subjective standard for determining when a disabled claimant's cause of action accrues. However, interpreting Section 28–01–25, N.D.C.C., as counsel suggests, would nullify the express limitations that statute places on the extension of time for disabilities. For example, if the claim for relief could not accrue until mental incompetency ceased to exist, the five-year limit on extensions for that disability would have little effect. If the disability is permanent, the claim would never accrue and there would be no limitation on the time for bringing an action. The language of the statute limiting extensions indicates that the Legislature did not intend to allow claimants with disabilities unlimited time to file lawsuits.

Section 28–01–31, N.D.C.C, supports our interpretation of Section 28–01–25, N.D.C.C.:

> "*28–01–31. Limitation for coexisting disabilities.* When two or more disabilities coexist at the time the claim for relief accrues, the limitation does not attach until they are all removed."

This statute, like Section 28–01–25, N.D.C.C., contemplates that a claim for relief can accrue while a claimant is suffering from disabilities. If we accepted Darci's argument that a claim cannot accrue until all disabilities cease to exist, the claimant's disabilities could not "coexist at the time the claim for relief accrues." These statutes clearly do not contemplate that result.

Section 28–01–31, N.D.C.C., provides that the limitation does not attach until all coexisting disabilities are removed. Construing this language, we are guided by the rule that we interpret statutes in context and in relation to others on the same subject to give meaning to each without rendering one or the other useless. *Ebach v. Ralston,* 469 N.W.2d 801 (N.D.1991). We attempt to harmonize statutes to avoid conflict between them. *Thompson v. N.D. Dept. of Agricultural,* 482 N.W.2d 861 (N.D.1992). Thus, we construe the requirement of Section 28–01–31, N.D.C.C., that coexisting disabilities must be "removed" for the limitation to attach, within the context of Section 28–01–25, N.D.C.C., which specifies the extension of time for disabilities.

This is a particularly difficult task, because the two provisions are nearly irreconcilable. Section 28–01–25, N.D.C.C., specifically limits the extensions for disabilities; five years for the "insane" from when the claim accrues and not longer than one year after the claimant reaches majority. However, Section 28–01–31, N.D.C.C., provides that the limitation cannot attach until all disabilities are removed; thereby, contradicting the Section 28–01–25, N.D.C.C., limits on extensions for disabilities.

A similar statute was interpreted by the Supreme Court of Montana in *Murphy for L.C. v. State,* 229 Mont. 342, 748 P.2d 907 (1987). The Montana statute provided that when multiple disabilities coexist at the time a right of action accrues the limitation does not attach until "they are both removed." Mont.Code Ann. § 27–2–401(4) (1985). In *Murphy* the claimant suffered from disabilities of mental illness and minority. The Montana court concluded that under its statute the limitations period on the claim would not expire until both of the claimant's disabilities ceased to exist. The Montana court reasoned that its disability extension statute, substantively similar to Section 28–01–25, N.D.C.C., applied only to single disability claimants and not when there were multiple disabilities.

We are not persuaded by the Montana Supreme Court's reasoning in *Murphy.*

A similar interpretation of our statutes would have unreasonable or absurd consequences, a result we attempt to avoid in interpreting statutes. *Ding v. Director, N.D. Department of Transportation,* 484 N.W.2d 496 (N.D. 1992). For example, imprisonment for a term less than life is considered a disability under Section 28–01–25, N.D.C.C. If we construe Section 28–01–31, N.D.C.C., to preclude the running of a statute of limitations until all multiple disabilities cease to exist, a person under the age of majority, who is in prison under a thirty-year sentence when his claim for relief accrues, could sue on the claim after serving the entire thirty-year sentence. The five-year limitation on extensions for imprisonment would have no practical effect. However, a person serving the same sentence, with no other statutory disability when the claim for relief accrues, would be limited to only a five-year extension of the limitations period for the imprisonment disability. We are not persuaded that the Legislature intended such a result.

The Legislature needs to reconcile these statutes and clarify how much protection it wishes to afford parties with disabilities. Until it does, the most we can hope to achieve in construing these disharmonious statutes is reasonable justice for both claimants with statutory disabilities and the persons they sue.

■ In the context of this case, we construe these statutes to allow a mentally incompetent person whose claim accrues six years or more before she becomes an adult, to have an extension of six years for filing the claim. The statutes give this multiply-disabled claimant a statutory one-year extension for minority, after reaching the age of majority, and also a statutory five-year extension for her mental incapacity.

If the claim accrues within six years before reaching majority, the claimant gets either the six-year statute of limitations from the date the claim accrues or one-year after at-

taining majority, whichever period is longer, and also gets a five-year extension for her mental incapacity. The one-year extension after attaining majority is not given in addition to the six-year limitations period; only the longer of those two periods is given. *See Crisp v. Schultis,* 507 N.W.2d 567 (S.D.1993). However, the five-year extension for mental incompetency is given in addition to the longer of those two periods.

The answer to the first certified question ultimately rests upon a finding of fact not yet made by the Federal district court. Whether Darci's action is time barred depends upon when a reasonable person, not suffering from any statutory disability, would have discovered that a potential claim exists.[3] That is when Darci's claim for relief accrued. From that date, the statutory extension of the time for filing her claim is determined in accord with the interpretation of Sections 28–01–25, N.D.C.C., and 28–01–31, N.D.C.C., explained herein.

■ Our answer to the second certified question is that we use an objective test of knowledge. In applying the discovery rule, for purposes of determining when the claim for relief accrues under Section 28–01–25, N.D.C.C., the claimant is deemed to know facts that a reasonable person, not suffering from any disability under the statute, would know. A parent or guardian's knowledge is not imputed to a minor or to a mentally incompetent person under Section 28–01–25, N.D.C.C.

SANDSTROM and LEVINE, JJ., concur.

MESCHKE, Justice, writing separately.

Because my view diverges from the majority opinion, I write separately.

The time limitation for a person with one or more disabilities does not simply run from the accrual or discovery date, like it does for someone without a disability. Rather, under NDCC 28–01–25, "the time of [a] disability is

---

**3.** Darci's counsel argues that BASF Corporation should be equitably estopped from asserting that Darci's claim was not timely filed, because BASF's negligence caused Darci's mental incompetency. *See Osland v. Osland,* 442 N.W.2d 907 (N.D.1989). In the stipulation of facts filed by the parties, BASF expressly denied that its product, Loxene, caused Darci's retardation or incompetency. The Federal district court has not made a specific finding on this question. Consequently, we do not resolve the equitable estoppel issue.

not a part of the time limited for the commencement of the action." *Besette v. Enderlin Sch. Dist. No. 22,* 288 N.W.2d 67, 73 (N.D.1980). Therefore, the limitation time would not begin until after expiration of all applicable extensions for disabilities.

Neither a child nor an incompetent is a reasonable person. Therefore, it would be anomalous to reason that the six-year statute begins to run for an incompetent child's claim when a reasonable person, not suffering from disabilities, would have been cognizant of facts placing a reasonable person on notice that the claim exists. Moreover, under NDCC 28–01–25, a parent or guardian's knowledge is not imputed to a child or to a mentally incompetent person.[1]

BASF concedes "that a person of the mental capacity of Darci is *not* by definition, a 'reasonable person,' capable of using 'reasonable diligence' to 'discover' the existence of a claim." Still, BASF argues that "the question is *not* what Darci knew or what Symington knew or what Darci's attorneys knew, but what a 'reasonable person,' using 'reasonable diligence,' should have known from the available information." BASF thus contends that Darci's "claim had been 'discovered' and 'accrued,' ... by the end of 1975, at the latest, when Darci was 9." BASF says that Symington and Darci's attorneys *"knew"* enough in 1975 to connect and confirm her mental retardation with the earlier toxic effects of Loxene.[2] BASF submits that the six-year period began to run from this "discovery" date, but allows that the six years was extended five more years by Darci's infancy and incompetency to expire eleven years later on December 31, 1986, at the latest.

BASF thus argues that the extensions for several disabilities are concurrent. "Giving Symington the benefit of the doubt and applying the 'discovery rule' to the date most favorable to Darci," BASF says that "there are grounds to 'extend' the 6–year period of limitations to 1 year beyond the date when Darci attained the age of majority," age eighteen, or " '[e]xtending' the 6–year period of limitations for *both* Darci's mental incompetency and her infancy, ... the period of limitations which began to run in 1975 is 'extended' 5 years to 1986 for Darci's mental incompetency, i.e., 1975 plus 11 years; or to 1985, i.e., 1 year after Darci turned 18, which would extend the period of limitations to July 19, 1985, *whichever is longer.* " Because no civil action was begun for Darci until 1991, BASF says her claim is time barred. BASF thus asks this court to interpret the statutes to make the extension periods for coexisting disabilities completely concurrent.

I think that BASF"s contention, that Darci "then had 'one year' to commence an action" after she turned age 18, is too simplistic. If discovery takes place and the claim accrues when an infant is seventeen, the plain meaning of the statute allows more than one year after maturity. NDCC 28–01–25 says: "[N]or can [the six-year period] be extended in any case longer than one year after the disability ceases." To harmonize the statute, a claimant disabled by infancy should have at least six years after discovery to sue, since under NDCC 28–01–25 "the time of such disability is not a part of the time limited." The interpretation of the infancy extension suggested by BASF would often allow a disabled person less than the full limitation

---

1. Under the majority view, the appointment of a guardian for an infant does not begin the limitations period. *See Young v. Key Pharmaceuticals, Inc.,* 112 Wash.2d 216, 770 P.2d 182 (1989); 51 AmJur2d *Limitation of Actions* § 183 (1970). The same is true for a mentally incompetent person. *See Tzolov v. International Jet Leasing, Inc.,* 232 Cal.App.3d 117, 283 Cal.Rptr. 314 (6th Dist.1991); 51 AmJur2d *Limitation of Actions* § 189 (1970).

2. To prevent the early filing of potentially frivolous claims to avoid time barring, where the cause of an unseen or latent injury is unknown or inherently difficult to discover, the reasonable-

ness of discovery should be evident. *See* Am Law Prod Liab 3d § 47:38, pp. 69–70 (Rev. Nov. 1990); *Biesterfeld v. Asbestos Corp. of America,* 467 N.W.2d 730 (N.D.1991). *See also MDU Resources Group v. W.R. Grace and Company,* 14 F.3d 1274 n. 9 (8th Cir.1994):

> Grace argued at trial not only that the statute of limitations had run, but also that the plaintiff had suffered no injury from the asbestos Monokote. The arguments are inconsistent: if MDU has suffered no injury from the Monokote, then it has no cause of action—until an injury is suffered, the statute of limitations cannot begin to run.

period after discovery to sue. *See Crisp v. Schultis,* 507 N.W.2d 567 (S.D.1993); *McKee v. White,* 218 A.D. 300, 218 N.Y.S. 215, 216 (N.Y.App.Div.1926) ("The claimant, having reached his majority before the 3–year limitation had expired, was required to commence his action either before the expiration of that period or within one year after he attained his majority.") BASF's formula would make statutes designed to benefit a disabled claimant into ones disadvantaging that disabled person.

On the other hand, Darci ignores the several limits on extensions of time for different disabilities altogether. Darci contends that, "because Darci has 'never been cognizant of the nature of her cause of action or the cause of it,'" as the order of certification states, and that lack of knowledge "was caused by BASF's wrongful conduct, the earliest that Darci can be held to have discovered her cause of action was 1987, when a legal guardian was appointed for her." Because this action was begun within six years after 1987, Darci asserts that her claim was not time barred.

These arguments frame the vital legal question in this case: Should extensions for coexisting disabilities be computed concurrently or consecutively?

The extension time for a disability should not be a part of the time limited, NDCC 28–01–25, and the limitation period "does not attach" until coexisting disabilities "are all removed." NDCC 28–01–31. In this case, if a reasonable person in Darci's shoes would have discovered this injury, its cause, and the manufacturer's role before she reached age eighteen, the crucial question is not the date of discovery or when the claim accrued. Rather, the answers to the questions of law here turn on how the disability extensions, that are "not a part of the time limited" and that must be "all removed," are computed before the limitation period of six years "does ... attach."

A disability extension should come first; then the limitation period should run, I believe. NDCC 28–01–31 says, "[w]hen two or more disabilities coexist at the time the claim for relief accrues, the [six-year] limitation does not attach until they are all removed,"

not when one of the disabilities ends. After all extensions that are "not a part of the time limited," the six-year limitation should run.

"Infancy" is expressly excepted from the five-year limit on an extension for incompetency in NDCC 28–01–25. Thus, no matter when her claim accrued before that, the time for Darci to sue BASF was clearly extended beyond her age of majority. However, upon Darci's majority, her mental disability did not cease. The statement of relevant facts tells us: "She is severely mentally retarded ... [and] the disability will remain for the rest of her life."

Under NDCC 28–01–25, "the time of [an incompetency] disability is not a part of the time limited for the commencement of the action." However, "the period within which the action must be brought cannot be extended more than five years" for incompetency by itself. Therefore, I would conclude that Darci should have a separate five-year extension for her mental disability before the six-year limitation begins to run. After Darci turned eighteen in 1984, a five-year extension for her mental incompetency would establish when her disabilities "are all removed." If a reasonable person would not have discovered the cause of her injury until sometime after 1984, the infancy extension would not apply, the five-year extension for incompetency would not begin until the time of discovery, and the six-year limitation would run thereafter, in my opinion. In this case, if a reasonable discovery should have occurred before 1984, I believe that the six-year limitation period would have begun in 1989, after the five-year consecutive extension for incompetency following infancy.

Without consecutive extensions for coexisting disabilities, an incompetent infant would receive no greater extension than a competent infant, and NDCC 28–01–31 would be practically meaningless. The interpretation of consecutive extensions for coexisting disabilities would give distinct meanings, that are neither absurd nor indefinite in time, to the direction in NDCC 28–01–31 that "the limitation [of six years] does not attach until they [two disabilities] are all removed," as well as to the distinct five-year limit in NDCC 28–

01–25 on an extension for the incompetency disability by itself.[3]

This interpretation would harmonize related statutes, *Continental Casualty Co. v. Kinsey,* 499 N.W.2d 574, 580 (N.D.1993), and give appropriate meaning to every part. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985). *Compare Murphy for L.C. v. State,* 229 Mont. 342, 748 P.2d 907 (1987) (period for patient to sue was tolled until patient ceased to be minor and ceased to suffer from mental illness). As *Sprecher v. Magstadt,* 213 N.W.2d 881, 883 (N.D.1973) indicates, where there is doubt about how to interpret an extension for a disability to toll a statute of limitations, the longest period should be selected.[4]

Since Darci sued in 1991, before the six-year limitation expired after consecutive, distinct, and separate extensions for her coexisting disabilities of infancy and incompetency, I would answer the certified questions: No. Darci's claim should not be time barred by the reasonable-person discovery rule, nor by the knowledge of her natural guardian and parent.

NEUMANN, J., concurs.

---

**3.** A disability for imprisonment is not pertinent to this case. How an extension for imprisonment might apply when disabilities coexist should await decision in a proper case. Different considerations may affect the interpretation of an extension for imprisonment. As an illustration, *see Strungosky v. Beatrice Marsh Holding Corporation,* 196 Misc. 162, 93 N.Y.S.2d 595 (1949).

**4.** *Compare Sax v. Votteler,* 648 S.W.2d 661 (Tex. 1983) (statute removing tolling of two-year period of limitation in medical malpractice action by minor after reaching age of six violates due process and open courts clauses of state constitution); *Little v. Graff,* 507 N.W.2d 55, 59 (N.D. 1993) (statute construed to avoid constitutional questions).