1999 ND 170

**Charles W. WELLS, Jr., on behalf of himself and all other individuals similarly situated, Plaintiff and Appellant,**

v.

**FIRST AMERICAN BANK WEST, n/k/a Bremer Bank, N.A., and Balboa Life and Casualty Insurance Company, Defendants and Appellees.**

No. 990017.

Supreme Court of North Dakota.

Aug. 25, 1999.

Mike Miller, Solberg, Stewart, Miller & Johnson, Fargo; Lawrence E. Abernathy III, Lawrence E. Abernathy, P.A., Laurel, Miss.; and Ronald S. Goldser (argued), J. Gordon Rudd, Jr., and Hart L. Robinovitch, Zimmerman Reed, P.L.L.P., Minneapolis; for plaintiff and appellant.

Richard P. Olson (argued), Olson Burns Lee, P.C., Minot; and Robert R. Weinstine, Darron C. Knutson, and M. Catherine Powell, Winthrop & Weinstine, P.A.,, Minneapolis; for defendant and appellee First American Bank West, n/k/a Bremer Bank, N.A.

Jon W. Backes, McGee, Hankla, Backes & Dobrovolny, P.C., Minot; and Ernest E. Vargo (argued) and Kyle B. Fleming, Baker & Hostetler LLP, Cleveland; for defendant and appellee Balboa Life and Casualty Insurance Company.

SANDSTROM, Justice.

[¶ 1] Charles Wells appeals from the judgment of the district court dismissing the action against First American Bank West ("First American") on March 27, 1998, and the judgment dismissing the action against Balboa Life and Casualty Insurance Company ("Balboa") on November 16, 1998. The court found no disputed issues of material fact in either suit and dismissed on the pleadings, finding the actions barred by the statute of limitations. Because the discovery of Wells's cause of action involves disputed questions of fact, the dismissal on the pleadings was inappropriate. We reverse and remand.

I

[¶ 2] Charles Wells bought a 1989 Pontiac Sunbird automobile on September 12, 1989, and financed the car through First American. The terms of the loan agreement required he acquire and maintain comprehensive and collision insurance on the vehicle and, in the alternative, authorized First American to purchase insurance for him if he did not do so. Wells did not maintain the insurance, and First American purchased the insurance from Balboa, a co-defendant in this case.

[¶ 3] Balboa provides collateral protection insurance, also known as force placed insurance. Insurance is force placed when a lender compels a borrower to maintain physical damage insurance and charges the premium to the borrower if the borrower does not comply. First American force placed insurance on Wells for the period August 10, 1990, through August 10, 1991, and charged him $1,431 for the insurance. The cost was added to the balance of the loan. In a letter addressed to Wells, dated November 16, 1990, First American informed him of the force placed insurance and stated, "This policy is for collision and comprehensive coverage only."

[¶ 4] Wells filed suit on September 16, 1997, claiming the $1,431 added to his loan balance for the collateral insurance included charges for additional coverage not authorized under the terms of the contract. According to Wells's complaint, the charge of $1,431 was "for numerous coverages including, but not limited to, secured interest protection and gap coverage, the purchase of which are not authorized by their agreement."

[¶ 5] The complaint further stated Wells believed certain "notices of insurance requirements, and/or certificates of coverage evidencing insurance coverage" may have been mailed to Wells. Wells admitted in his appellate brief that he in fact received two such notices dated November 6, 1990, and November 16, 1990, respectively. The November 6, 1990, letter from First American specifically advised Wells the "premium cost of $1,431.00 ... will be added to your loan." When First American actually purchased the collateral insurance, it sent Wells a second letter dated November 16, 1990, which again stated "the premium of $1,431.00 has been added to the balance of

your loan." The letter stated the excess coverage was for "collision and comprehensive coverage only." Wells commenced suit in September 1997 for breach of contract against First American, tortious interference with a contractual relationship against Balboa, breach of duty of good faith and fair dealing against First American and Balboa, unjust enrichment against Balboa, and civil conspiracy, after having watched a television show warning consumers that extra insurance is often added when insurance is force placed.

[¶ 6] Wells appeals from the judgments of the Northwest Judicial District Court dismissing the case. The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] Wells argues there were material issues of fact in dispute that should have precluded the district court from dismissing the case on the pleadings. The district court found on the pleadings and ruled as a matter of law that no material facts were in dispute and the action was barred by the statute of limitations. *See American State Bank and Trust Co. of Williston v. Sorenson,* 539 N.W.2d 59 (N.D.1995). When there is no dispute in the evidence about the facts, the question of whether the statute of limitations has run is for the court. *Bormann v. Beckman,* 73 N.D. 720, 19 N.W.2d 455, 460 (1945). "Because determinations on the merits are generally preferred to dismissal on the pleadings, Rule 12(b)(v) motions are viewed with disfavor." *Towne v. Dinius,* 1997 ND 125, ¶ 7, 565 N.W.2d 762 (citing *Kouba v. Febco, Inc.,* 543 N.W.2d 245, 247 (N.D.1996)). Therefore, a court's scrutiny of the pleadings should be deferential to the plaintiff, unless it is clear there are no provable facts entitling the plaintiff to relief. *Id.* (citations omitted). We "will generally reverse a judgment dismissing a complaint for failure to state a claim whenever we can discern a potential for proof to support it." *Id.* While we defer to a district court's findings of fact, issues decided as questions of law are fully reviewable. *Fisher v. American Family Mut. Ins. Co.,* 1998 ND 109, ¶ 5, 579 N.W.2d 599.

## A

[¶ 8] The district court dismissed the case against First American and Balboa because it found no facts in dispute and, consequently, Wells's suit barred by the statute of limitations. In this case, however, we hold disputed facts precluded dismissal of the claim as barred by the statute of limitations. Under N.D.C.C. § 28–01–16:

> The following actions must be commenced within six years after the claim for relief has accrued:
>
> 1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104.
>
> . . . .
>
> 6. An action for relief on the ground of fraud in all cases both at law and in equity, the claim for relief in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

N.D.C.C. § 28–01–16.

[¶ 9] Because the statute is silent on when an action accrues, the determination is left to the court. *Schanilec v. Grand Forks Clinic, Ltd.,* 1999 ND 165, ¶ 11 (citing *Baird v. American Medical Optics,* 155 N.J. 54, 713 A.2d 1019, 1025 (1998)). In *Osland v. Osland,* 442 N.W.2d 907, 908 (N.D.1989), this Court said that generally the statute of limitations begins to run from the commission of the wrongful act giving rise to the cause of action. We have also recognized, however, this rule is often harsh and unjust, which is why so many courts have adopted the discovery rule. *Schanilec,* at ¶ 11. "The discovery rule is meant to balance the need for prompt assertion of claims against the

policy favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it." *Id.* (citing *Buck v. Miles,* 89 Hawai'i 244, 971 P.2d 717, 722 (1999)). *See also MDU Resources Group v. W.R. Grace and Company,* 14 F.3d 1274, 1277 (8th Cir.1994) (citing *Wall v. Lewis,* 366 N.W.2d 471, 473 (N.D.1985); *Iverson v. Lancaster,* 158 N.W.2d 507 (N.D.1968)) ("To determine the point at which any statute of limitations begins to run, North Dakota applies the discovery rule.").

[¶ 10] The discovery rule is an exception to the limitations and, if applicable, determines when the claim accrues for the purpose of computing limitations. The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. Courts generally apply the discovery rule when it would have been difficult for the plaintiff to have learned of the negligent act or omission that gave rise to the legal injury. *Bates v. Texas State Technical College,* 983 S.W.2d 821, 828 (Tex.Ct.App.1998) (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996)). We have used an objective standard for the knowledge requirement under the discovery rule. *BASF Corp. v. Symington,* 512 N.W.2d 692, 695 (N.D.1994). The focus is upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs. *Id.* (citing *Biesterfeld v. Asbestos Corp. of America,* 467 N.W.2d 730 (N.D.1991)).

[¶ 11] The appellants argue the discovery rule does not apply to contract actions. We think their arguments are misplaced and hold the discovery rule applies to a breach of contract claim. In *Hebron Public School v. United States Gypsum Co.,* 475 N.W.2d 120 (N.D.1991), this Court applied the discovery rule to N.D.C.C. § 28–01–16(1) and held a cause of action does not accrue until the aggrieved party discovers the facts that con-stitute the basis for its cause of action or claim for relief. "We conclude that for purposes of § 28–01–16(1), N.D.C.C., (Cum.Supp.1989), a cause of action, or claim for relief does not accrue until the aggrieved party discovers the facts which constitute the basis for its cause of action or claim for relief...." *Id.* at 126. *Hebron Public School* was an action involving the use of asbestos in construction of a school building. 475 N.W.2d at 120–21. Because the case was an action in contract, tort, and based upon fraud and equity, the Court applied N.D.C.C. § 28–01–16(1) and (6). *Id.* at 121. In *Hebron Public School,* this Court examined the discovery rule and its application to other areas of the law. *Id.* at 121–25. Although some states do not apply the discovery rule in contract actions, this Court has long applied it to other areas of the law, and contract actions are no different. *See Iverson,* 158 N.W.2d 507 (first North Dakota case to adopt discovery rule). Language from *Hebron Public School* is persuasive: "[B]ecause of the range of our previous decisions applying a discovery rule in other actions ... and in light of legislation incorporating discovery rules in other statutes of limitations, we decline to now hold that a discovery rule is not applicable to this action under § 28–01–16(1)...." *Hebron Public School,* at 124.

### B

[¶ 12] The district court did not address the discovery rule in dismissing the case. The relevant question is when did Wells discover he had a potential cause of action against the insurance company. When Wells purchased the vehicle, the agreement called for force placed insurance to protect the bank's interest in the property. When Wells failed to insure the vehicle, he received a letter informing him insurance was being purchased and the cost added to his loan. Wells, however, argues the force placed insurance exceeded his obligation under the terms of his loan agreement. He argues he was never told of the excess insurance, and the No-

vember 16, 1990, letter from First American stated the excess coverage was for "collision and comprehensive coverage only." Wells claims this was a breach of contract and a fraudulent cover-up by First American and Balboa that did not allow him to "discover" his cause of action until sometime in 1997, after having watched a news program.

[¶ 13] First American and Balboa argue Wells's complaint serves as proof the two letters he received in 1990 signify he "discovered" the alleged fraud and breach of contract much earlier than 1997. Both rely heavily on the language of the complaint and statements made therein to support the position Wells was on notice.[1] First American and Balboa both argue the following language in the complaint bars Wells's claim:

> On or about August 10, 1990, First American force placed insurance upon Plaintiff for the period August 10, 1990 through August 10, 1991 and charged him $1,431.00 for said insurance. Plaintiff paid the charges for this insurance. Said charges were in excess of that permitted in his loan agreement, and in excess of his obligations under this agreement. The insurance was placed with a company different from that of Plaintiff's choosing. The coverage was for risks beyond that which Plaintiff was able to obtain for himself and was in excess of the risks Plaintiff was required to insure.

Both argue this language indicates Wells knew the excess insurance, which forms his claims, had been added on or about August 10, 1990. We cannot agree and hold the argument fails in light of the discovery rule. No admission or acknowledgment by Wells is found in the com- plaint, and nothing states he knew the alleged excess insurance had been added on those dates.

[¶ 14] The district court, however, agreed with First American and Balboa and found "[t]he pleadings of the parties agree that the Defendant Bank caused Defendant Insurance Company to place a policy of insurance on Plaintiff's motor vehicle on August 10, 1990 and again on August 10, 1991. The Plaintiff began this action on September 16, 1997." The court then stated: "The Plaintiff admits that if the placement of the policy is dispositive of the motion, the action was brought after the time period allowed by the statute of limitation." The court continued: "Plaintiff either knew or should have known that he had not insured his motor vehicle. From the increase in monthly payments, a person of ordinary intelligence would understand that he was paying for the insurance and that Bank had insured it for him." The case was then dismissed because the suit was filed beyond the statute of limitations in N.D.C.C. § 28–01–16.[2]

[¶ 15] The district court ruled very narrowly. Applying the discovery rule, the placement of the policy could trigger the statute of limitations if Wells knew, or should have known, of the excess coverage that is the basis of his breach of contract and fraud claims. The court did not apply the discovery rule, and notwithstanding Wells's admission that the claim would be barred if the placement of the policy were dispositive, the placement of the policy is not dispositive in this case. There is no mention in the memorandum opinion regarding discovery or what Wells actually knew or should have known regarding

---

1. Both First American and Balboa argue fraudulent concealment was not sufficiently pleaded in ¶ 15 of the complaint. Although the complaint may have been inartfully drafted and did not state the claims precisely, Wells will have the opportunity on remand to amend his complaint. Wells's counsel told the district court he would amend the complaint should that be necessary, but leave was never provided to do so.

2. The court actually cites N.D.C.C. § 28–01–15, but this is obviously incorrect. That section provides for a 10–year statute of limitations in claims having to do with contracts in conveyances or mortgages, or instruments affecting the title to real property.

when the insurance was force placed. We believe reasonable minds could disagree upon when Wells knew or should have known about his claims for breach of contract and fraud. Therefore, without findings regarding what Wells knew or should have known, designating the time of placement of the policy as the trigger for the statute of limitations was in error.

[¶ 16] The district court erred in deciding this case based on when the policy was placed on Wells's car. Furthermore, there are enough factual disputes in the record to indicate Wells's knowledge of when the "extra" insurance was added precludes a disposal of his claim on the pleadings. Although the complaint may have been imprecise and vague in its assertions, the inquiry must focus on when Wells knew, or should have known, he had a cause of action. Because the case was dismissed erroneously, without reference to the discovery rule, and because reasonable minds could draw different conclusions regarding the existing facts, dismissal of the case was improper.

### III

[¶ 17] The judgments of the district court are reversed, and the case is remanded for proceedings consistent with this opinion.

[¶ 18] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.