2010 ND 51

**Shirley MERTZ, Plaintiff and Appellant**

v.

**999 QUEBEC, INC. (f/k/a International Boiler Works Company), a Delaware corporation; A.H. Bennett Company, a Minnesota corporation; A.O. Smith Corporation, a Delaware corporation; A.W. Chesterton Company, a Massachusetts corporation; Airco, Inc., a Delaware corporation; American Standard, Inc., a Delaware corporation; Anchor Packing Company, a Delaware corporation; Apollo Piping & Supply, an Illinois corporation; Asbestos Corporation, Ltd., a Canadian corporation; Atlas Turner, Inc., a Canadian corporation; Australian Blue Asbestos, Pty., an Australian corporation; Bell & Gossett, a foreign corporation; Bell Asbestos Mines, Ltd., a Canadian corporation; Bryan Steam Corporation, an Indiana corporation; Building Sprinkler Company, Inc., a North Dakota corporation; Burnham**

Corporation, a Pennsylvania corporation; CBS Corporation (f/k/a Westinghouse Electric Corporation), a Pennsylvania corporation; Carborundum Abrasives Company, a Delaware corporation; Carborundum Company, a Delaware corporation; Certain-Teed Corporation, a Maryland corporation; Chicago–Wilcox Manufacturing Company, an Illinois corporation; Chromalox (a division of Emerson Electric Co.), a Missouri corporation; Cleaver–Brooks, Division of Aqua-Chem, Inc., a Delaware corporation; Crane Company, a Delaware corporation; Crown Cork & Seal Company, Inc., a New York corporation (individually and as successor-in-interest to Mundet Cork Corporation); CSR, Ltd. a/k/a Colonial Sugar Refining Company, Ltd., an Australian corporation, individually and as an alter-ego of Australian Blue Asbestos, Pty.; Dakota Welding Supply, a foreign corporation; Deltak, L.L.C., a Unit of Jason, Inc., a Minnesota corporation; Detroit Stoker, a Michigan corporation; Draxton Sales, a Minnesota corporation; Durabla Manufacturing Company, a Pennsylvania corporation; E.J. Lavino and Company, Inc., a Delaware corporation; F.R.P. Products, Ltd., a foreign corporation; F & C Supply, Inc., a North Dakota corporation; Fargo–Moorhead Insulation Company, a North Dakota corporation; Firebrick Supply Co., a Minnesota corporation; Foster Products Corporation, a Minnesota corporation (as successor-in-interest to Foster Products Division of H.B. Fuller Company and to the Benjamin Foster Division of AmChem Products, Inc.); Foster Wheeler Corporation, a New York corporation; Garlock, Inc., an Ohio corporation; General Electric Company, a foreign business corporation organized under the laws of New York; Georgia–Pacific Corp., a Georgia corporation; Goodrich Corporation, a New York corporation, (f/k/a B.F. Goodrich Company); Goodyear Tire & Rubber Company, an Ohio corporation; Goulds Pumps, Inc., a New York corporation; Greene, Tweed & Co., a Pennsylvania corporation; Guard–Line, Inc., a Texas corporation; H.B. Fuller. Co., a Minnesota corporation; H.H. Robertson Company, a Pennsylvania corporation; Henry Vogt Machine Company, a Kentucky corporation; Hercules Chemical Company, Inc., a New Jersey corporation; Hickory Insulation Co., a foreign corporation; Hobart Brothers Co., an Ohio corporation; Honeywell, Inc., a Delaware corporation; Hydrotherm, Inc., a California corporation; Inductotherm Industries, Inc., a New Jersey corporation; Ingersoll–Rand Company, a New Jersey corporation; Insulation Services, Inc., a Louisiana corporation; International Vermiculite Co., an Illinois corporation; J.H. France Refractories Company, a Pennsylvania corporation; The Jamar Company, a Minnesota corporation (individually and as successor-in-interest and liability to the Walker Jamar Company, a former Minnesota corporation); John Crane, Inc., a Delaware corporation (successor-in-interest to John Crane–Houdaille, Inc. and Crane Packing Company); Johnston Boiler Co., a Michigan corporation; Kelsey–Hayes Group (a division of Varity Corporation), a Delaware corporation; Kewanee Boiler Corporation (n/k/a OakFabCo, Inc.), an Illinois corporation; Lincoln Electric Co., an Ohio corporation; Lochinvar, a Tennessee corporation; Mauritzon, Inc., a foreign corporation; McMaster Carr Supply Compa-

ny, an Illinois corporation; Mellema Company, a Minnesota corporation; Metropolitan Life Insurance Company, a foreign corporation; Minnesota Mining & Manufacturing, a Delaware corporation; Murray Iron Works Company, a foreign corporation; Northern Plumbing & Heating, Inc., a North Dakota corporation; Northern Plumbing Supply, Inc., a North Dakota corporation; Norton Company, a Delaware corporation, individually and as successor by merger with Carborundum Abrasives Company; Owens–Illinois, Inc., an Ohio corporation; The P.R. Sussman Company, an Ohio corporation, as successor to The Sussman Asbestos Company; Parker Boiler Co., a California corporation; Paul A. Douden, a Colorado corporation; Paul W. Abbott, a foreign corporation; The Peerless Heater Company, Division of Peerless Industries, Inc., a foreign corporation; Power Process Equipment, Inc., a Minnesota corporation; Praxair Distribution, Inc., a foreign corporation; Rapid–American Corporation, a Delaware corporation; Research Cottrell, Inc., a New Jersey corporation; Rheem Manufacturing Company, a Delaware corporation; Rhone–Poulenc, Inc., a New York corporation (as successor-in-interest to Benjamin Foster, a division of AmChem Products Company); Riley Stoker Corporation, a foreign business corporation organized under the laws of Mississippi; Rite–Hite Corporation, a Wisconsin corporation; Ruud Manufacturing Company, a foreign corporation; S.O.S. Products Company, Inc., a New York corporation; SEPCO Corporation, an Alabama corporation; Singer Safety Company, an Illinois corporation; Smith–Sharpe Company, a Minnesota corporation; Sprinkmann Sons Corporation, a Wisconsin corporation; Sprinkmann Sons Corporation of Illinois, an Illinois corporation; Superior Boiler Works, Inc., a Kansas corporation; Sussman Electric Boilers, a New York corporation; The Trane Co., a New York corporation, (a division of American Standard, Inc.); Union Boiler Co., a Delaware corporation; Union Carbide Corporation, a Delaware corporation; Uniroyal, Inc., a New Jersey corporation; United Conveyor Corporation, an Illinois corporation; Victor H. Leeby Company, a North Dakota corporation; Walker Jamar Company, a Minnesota corporation; Water Applications & Systems Corporation, (f/k/a United States Filter Corporation), a foreign corporation; Weil McLain Company, a Delaware corporation; Whittier Filtration, Inc., (f/k/a U.S. Filter/Whittier, Inc.), a subsidiary of Water Applications & Systems Corporation, a foreign corporation; Zurn Industries, Inc., a Pennsylvania corporation, Defendants

A.H. Bennett Company, a Minnesota corporation; Crane Company, a Delaware corporation; A.O. Smith Corporation, a Delaware corporation; Bryan Steam Corporation, an Indiana corporation; Burnham Corporation, a Pennsylvania corporation; Certain–Teed Corporation, a Maryland corporation; Chromalox (a division of Emerson Electric Co.), a Missouri corporation; Cleaver–Brooks, Division of Aqua–Chem, Inc., a Delaware corporation; Crane Company, a Delaware corporation; Detroit Stoker, a Michigan corporation; Foster Products Corporation, a Minnesota corporation (as successor-in-interest to Foster Products Division of H.B. Fuller Company and to Benjamin

Foster Division of AmChem Products, Inc.); Foster Wheeler Corporation, a New York corporation; L.L.C.; Goulds Pumps, Inc., a New York corporation; Greene, Tweed & Co., a Pennsylvania corporation; Guard–Line, Inc., a Texas corporation; Inductotherm Industries, Inc., a New Jersey corporation; Industrial Holdings Corporation, f/k/a The Carborundum Company; Ingersoll–Rand Company, a New Jersey corporation; ITT Corporation, f/k/a Bell & Gossett, a foreign corporation; Fargo–Moorhead Insulation Company, a North Dakota corporation; Goodrich Corporation, a New York corporation (f/k/a B.F. Goodrich Company); Goodyear Tire & Rubber Company, an Ohio corporation; Kelsey–Hayes Group (a division of Varity Corporation), a Delaware corporation; Mauritzon, Inc., a foreign corporation; McMaster Carr Supply Company, an Illinois corporation; The Peerless Heater Company, Division of Peerless Industries, Inc., a foreign corporation; Riley Stoker Corporation, a foreign business corporation organized under the laws of Mississippi; Rite–Hite Corporation, a Wisconsin corporation; Saint–Gobain Abrasives, Inc. (f/k/a Norton Company, a Delaware corporation, individually and as successor by merger with Carborundum Abrasives Company); Singer Safety Company, an Illinois corporation; Smith–Sharpe Company, a Minnesota corporation; S.O.S. Products Company, Inc., a New York corporation; Sprinkmann Sons Corporation of Illinois, an Illinois corporation; Superior Boiler Works, Inc., a Kansas corporation; Sussman Electric Boilers, a New York corporation; The Trane Co., a New York corporation, (a division of American Standard, Inc.);

Union Carbide Corporation, a Delaware corporation; Uniroyal, Inc., a New Jersey corporation; United Conveyor Corporation, an Illinois corporation; and Weil–McLain Company, a Delaware corporation; Defendants and Appellees.

No. 20090031.

Supreme Court of North Dakota.

March 24, 2010.

David C. Thompson (argued), David C. Thompson, P.C., Grand Forks, N.D., for plaintiff and appellant.

Jeanette T. Boechler (on brief), Boechler Law Firm, Fargo, N.D., for plaintiff and appellant.

William Hart (argued) and David Thomas Schach (appeared), Minneapolis, MN, for defendants and appellees United Conveyor Corporation, and S.O.S. Products Company, Inc.

Elizabeth Marie Sorenson Brotten (appeared), Kyle Brown Mansfield (on brief), Robert E. Diehl (on brief) and Heather H. Neubauer (on brief), Foley & Mansfield, Minneapolis, MN, for defendants and appellees A.H. Bennett Company, Foster Wheeler Corporation; Greene, Tweed & Company; Norton Company n/k/a Saint–Gobain Abrasives, Inc.; Riley Stoker Corporation, Rite–Hite Corporation; Sprinkmann Sons Corporation of Illinois; Singer Safety Company; and Weil–McLain Company.

Steven A. Storslee (on brief), Storslee Law Firm, Bismarck, N.D., for defendant and appellee Crane Company.

Douglas W. Gigler (on brief), Nilles, Ilvedson, Plambeck & Selbo, Ltd., Fargo, N.D., for defendant and appellee A.O. Smith Corporation.

Paul Rudell Oppegard (on brief), Oppegard, Wolf & Quinton, Moorhead, MN, for defendants and appellees Inductotherm Industries, Inc., Uniroyal, Inc., Sussman Automatic Corporation, Guard–Line, Inc., Sprinkmann Sons Corporation, and Kelsey–Hayes Group.

Nicholas John O'Connell (on brief), Murnane Brandt, St. Paul, MN, for defendant and appellee Industrial Holdings Corporation f/k/a The Carborundum Company.

Stacey Tjon Bossart (on brief), Solberg, Stewart, Miller & Tjon, Fargo, N.D., for defendants and appellees Bryan Steam Corporation, and Mauritzon, Inc.

Thomas Evenson (appeared) and Thomas Dice Jensen (on brief), Lind Jensen Sullivan & Peterson, P.A., Minneapolis, MN, for defendant and appellee Smith–Sharpe Company.

Tracy Lyson (appeared) and Timothy Michael O'Keeffe (on brief), Kennelly & O'Keeffe, Ltd., Fargo, N.D., for defendant Fargo–Moorhead Insulation Company.

Ronald H. McLean (on brief) and Jean L. Dynes (on brief), Serkland Law Firm, Fargo, N.D., for defendants and appellees Certain–Teed Corporation, Foster Products Corporation, and Union Carbide Corporation.

W. Todd Haggart (on brief), Vogel Law Firm, Fargo, N.D., for defendants and appellees ITT Corporation, f/k/a Bell & Gossett, Detroit Stoker, Ingersoll–Rand Company, McMaster–Carr Supply Company, U.S. Peerless Industries, Superior Boiler Works, Inc., and Trane (f/k/a American Standard, Inc.).

Scott David Jensen (on brief), Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, N.D., for defendant and appellee Cleaver–Brooks, Division of Aqua–Chem, Inc.

B. Timothy Durick (on brief), Pearce & Durick, Bismarck, N.D., for defendant and

appellee Chromalox (a division of Emerson Electric Co.).

Jon P. Parrington (on brief) and Michael D. Sharkey (on brief), Pustorino, Tilton, Parrington, Lindquist, Minneapolis, MN, for defendants and appellees Goodrich Corporation, and Goodyear Tire & Rubber Company.

Shawnda R. Ereth (on brief), Zuger Kirmis & Smith, Bismarck, N.D., for defendants and appellees Goulds Pumps, Inc., and Burnham Corporation.

CROTHERS, Justice.

[¶ 1] Shirley Mertz ("Mertz") appealed from a district court order granting summary judgment dismissing her survival action filed on behalf of the estate of her husband, Allen Mertz, seeking to recover damages for alleged asbestos-related injuries from numerous asbestos manufacturers, distributers and sellers ("Defendants"). I would affirm, concluding the discovery rule does not toll the accrual of a survival action beyond the date of the decedent's death.

I

[¶ 2] Allen Mertz worked as a pipefitter for more than thirty years, during which he was allegedly exposed to asbestos-containing products manufactured, sold, or distributed by the Defendants. Allen Mertz was diagnosed with lung cancer in 1995 and died of the disease in 1996. Mertz alleges that Allen Mertz's doctors never informed him or any family member that his lung cancer was related to his exposure to asbestos. Rather, she alleges that she first learned of a possible connection with asbestos sometime after 2000, when a former co-worker of her husband suggested that she "check into" whether Allen Mertz's lung cancer was related to his exposure to asbestos at work. In 2003, after reviewing the medical records, a doctor provided a written report indicating Allen Mertz's exposure to asbestos "was a significant causative factor in his lung cancer."

[¶ 3] Mertz brought this survival action on behalf of Allen Mertz's estate in 2005, alleging Allen Mertz's exposure to the Defendants' asbestos-containing products caused his cancer and death. Several of the Defendants moved for summary judgment, contending the action was barred by the statute of limitations. The Defendants relied upon two notations made prior to 1996 in Allen Mertz's medical records mentioning his exposure to asbestos and noting his daughter had requested a written statement from the treating doctor verifying that Allen Mertz had lung cancer and had been exposed to asbestos. The Defendants thus argued Allen Mertz had discovered his injury and its cause, and the cause of action had accrued, prior to his death in 1996, and the six-year statute of limitations under N.D.C.C. § 28-01-16(5) had expired before Mertz commenced this survival action in 2005.

[¶ 4] The district court concluded that, as a matter of law, Allen Mertz and his family knew by 1995 that his cancer was related to his exposure to asbestos and that they were by that time aware of facts about his asbestos-related disease to put them on notice a potential claim existed. The district court therefore concluded the six-year statute of limitations had expired before this action was commenced in 2005 and ordered summary judgment be entered dismissing Mertz's action as to all Defendants.

II

[¶ 5] Mertz has attempted to appeal from the order granting summary judgment. An order granting summary judgment is not appealable. *Farmers Union*

*Oil Co. v. Smetana*, 2009 ND 74, ¶ 7, 764 N.W.2d 665; *Alerus Fin., N.A. v. Western State Bank*, 2008 ND 104, ¶ 15, 750 N.W.2d 412. "An attempted appeal from [an] order granting summary judgment will, however, be treated as an appeal from a subsequently entered consistent judgment, if one exists." *Smetana*, at ¶ 7; *Wheeler v. Gardner*, 2006 ND 24, ¶ 6, 708 N.W.2d 908. A consistent judgment dismissing Mertz's claims against all Defendants was entered, and we treat the appeal as an appeal from the judgment.

### III

[¶ 6] Mertz contends the district court erred when it concluded that, as a matter of law, Allen Mertz and his family knew by 1995 that his cancer was asbestos-related and that his cause of action accrued at that time. Mertz alleges that, viewing the evidence in the light most favorable to her as the party opposing summary judgment, no member of the Mertz family discovered that the cancer might be asbestos-related until sometime after 2000, when a former co-worker of Allen Mertz advised Mertz she should "check into" whether the cancer was related to Allen's exposure to asbestos. Accordingly, Mertz contends the discovery rule applied, the survival cause of action did not accrue until after 2000 and the action brought in 2005 was not barred by the six-year statute of limitations.

[¶ 7] The Defendants contend the record supports the district court's decision that the Mertz family had discovered Allen's cancer was asbestos-related by 1995. Alternatively, the Defendants contend the discovery rule does not apply to extend accrual of a survival cause of action beyond the date of death of the decedent. We conclude this latter issue is dispositive of the appeal.

[¶ 8] The relevant survival statute is N.D.C.C. § 28-01-26.1:

> "No action or claim for relief, except for breach of promise, alienation of affections, libel, and slander, abates by the death of a party or of a person who might have been a party had such death not occurred."

In *Hulne v. International Harvester Co.*, 322 N.W.2d 474, 477 (N.D.1982), this Court held the statute of limitations which would have governed the action had it been brought by the decedent also applies when the action is brought as a survival action by the personal representative after the decedent's death. The parties agree, for purposes of this appeal, the six-year statute of limitations under N.D.C.C. § 28-01-16(5) applies to the survival action for Allen Mertz's alleged injuries caused by exposure to asbestos-containing products.[1]

[¶ 9] The crucial question in this case is when did the survival cause of action accrue. This Court has adopted the discovery rule, postponing accrual of a cause of action until the plaintiff is placed on notice that a potential claim exists, in cases where it would be difficult for the plaintiff to have learned of the defendant's negligent act or omission giving rise to an injury. *See Riemers v. Omdahl*, 2004 ND 188, ¶ 6, 687 N.W.2d 445; *Wells v. First Am. Bank West*, 1999 ND 170, ¶ 10, 598 N.W.2d 834; *see also Schanilec v. Grand Forks Clinic, Ltd.*, 1999 ND 165, ¶ 11, 599

---

1. The Defendants contend there is an ongoing dispute whether the special three-year statute of limitations for injuries caused by exposure to asbestos included in the products liability statute of repose, N.D.C.C. § 28-01.3-08, is still viable after the statute of repose was declared unconstitutional in *Dickie v. Farmers* *Union Oil Co.*, 2000 ND 111, 611 N.W.2d 168. In their arguments on appeal, however, the Defendants acknowledged it makes no difference whether the limitations period is three or six years, and expressly stated they "will assume for the sake of argument that the six-year limitations period applies."

N.W.2d 253; *Hebron Pub. Sch. Dist. v. United States Gypsum Co.,* 475 N.W.2d 120, 121–26 (N.D.1991); *Biesterfeld v. Asbestos Corp. of Am.,* 467 N.W.2d 730, 736 (N.D.1991). We explained the application of the discovery rule in *Wells:*

"In *Osland v. Osland,* 442 N.W.2d 907, 908 (N.D.1989), this Court said that generally the statute of limitations begins to run from the commission of the wrongful act giving rise to the cause of action. We have also recognized, however, this rule is often harsh and unjust, which is why so many courts have adopted the discovery rule. 'The discovery rule is meant to balance the need for prompt assertion of claims against the policy favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it.' [*Schanilec v. Grand Forks Clinic, Ltd.,* 1999 ND 165, ¶ 11, 599 N.W.2d 253].

"The discovery rule is an exception to the limitations and, if applicable, determines when the claim accrues for the purpose of computing limitations. The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. Courts generally apply the discovery rule when it would have been difficult for the plaintiff to have learned of the negligent act or omission that gave rise to the legal injury. We have used an objective standard for the knowledge requirement under the discovery rule. The focus is upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs."

*Wells,* at ¶¶ 9–10 (citations omitted); *see also Dunford v. Tryhus,* 2009 ND 212, ¶ 9, 776 N.W.2d 539 (quoting *Wells* ).

[¶ 10] This case presents a question of first impression for this Court: May the discovery rule be applied to toll the accrual of a survival action beyond the date of death of the decedent? The Defendants contend that the survival statute, N.D.C.C. § 28–01–26.1, only preserves those causes of action which had accrued to the decedent and were in existence at the time of death, so that a survival action accrues, at the latest, upon the death of the decedent. Mertz contends that the survival statute preserves to the survivor all rights which the decedent had, including rights in potential claims which might accrue upon later discovery, and therefore that the survival action in this case did not accrue until Mertz discovered the potential claim sometime after Allen Mertz's death.[2]

[¶ 11] Courts in other jurisdictions addressing this issue have reached varying results, but the majority have concluded the discovery rule does not extend accrual of a survival cause of action beyond the date of the decedent's death. *See Redeker v. Johns–Manville Products Corp.,* 571 F.Supp. 1160, 1168 (W.D.Pa.1983); *Johnson v. Koppers Co., Inc.,* 524 F.Supp. 1182, 1191–92 (N.D.Ohio 1981); *McDaniel v. Johns–Manville Sales Corp.,* 511 F.Supp. 1241, 1243 (N.D.Ill.1981); *Greene v. CSX Transp., Inc.,* 843 So.2d 157, 162–63 (Ala. 2002); *Santos v. George Washington Univ. Hosp.,* 980 A.2d 1070, 1073–76 (D.C.2009);

---

**2.** Judge Lee would not reach this question based on his belief the issue was not raised in the district court. I respectfully disagree. The Defendants' Joint Memorandum of Law In Support of their Motion to Dismiss on Statute of Limitations Grounds raised the issue in the court below. On appeal, the Defendants argue that the North Dakota survival action does not allow claims to accrue after the injured party's death and that the discovery rule cannot be used to circumvent the survival statute. Therefore, the issue is ripe for review.

*Trimper v. Porter–Hayden,* 305 Md. 31, 501 A.2d 446, 456–58 (1985), *partially abrogated by statute as stated in Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 904 A.2d 511, 522 n. 5 (2006); *Pobieglo v. Monsanto Co.,* 402 Mass. 112, 521 N.E.2d 728, 732–33 (1988); *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 526 A.2d 323, 326–27 (1987); *Anthony v. Koppers Co.,* 496 Pa. 119, 436 A.2d 181, 184–85 (1981). *Contra Eisenmann v. Cantor Bros., Inc.,* 567 F.Supp. 1347, 1353–54 (N.D.Ill.1983); *White v. Johns–Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687, 695–97 (1985).

[¶ 12] The competing policy interests between the two approaches were aptly summarized in *Trimper:*

> "Appellants' argument, on the one hand, emphasizes the impact on the survivor plaintiff and rests on a rigorous, legal logic. A wrong had been done to the decedent who died without realizing that he possessed a cause of action which has become part of the decedent's estate, so that, if and when a reasonably diligent personal representative knows or should know the asset exists, the personal representative should be able to assert the cause of action. Appellees' argument, on the other hand, emphasizes the impact on defendants and rests on practicality. Appellees would combine the discovery rule and the policy of repose historically associated with statutes of limitations so that the person who immediately suffers the injury is protected throughout that person's lifetime by the discovery rule but, on death, accrual under CJ § 5–101 would occur. The personal representative would then have three years from death within which to sue. Thereafter the cause of action would be barred whether or not it had been discovered."

501 A.2d at 456.

[¶ 13] Courts rejecting application of the discovery rule beyond the date of death have stressed the logical and practical ramifications of the rule. Some courts have reasoned that, because "survival statutes do not create a new cause of action[,] they simply permit a personal representative to enforce a cause of action which ha[d] already accrued to the [decedent] before his death." *Pastierik,* 526 A.2d at 326 (quoting *Anthony,* 436 A.2d at 185); *see, e.g., McDaniel,* 511 F.Supp. at 1243. After death, there can no longer be accrual of a cause of action under the survival statute. *McDaniel,* at 1243; *Anthony,* at 185.

[¶ 14] Courts have also emphasized that refusal to extend accrual beyond the death of the decedent is consistent with the underlying purposes of the statute of limitations to prevent stale claims and to provide a predictable and reasonable period of time after which claims will be barred. Thus, the court in *Johnson* noted:

> "Further, to apply the discovery rule so as to toll the running of the statute of limitations beyond the death of injured individuals would be contrary to the purpose of the statute of limitations of preventing stale claims. Allowing the discovery rule to run past the date of death would allow survival actions to be brought *at any time* the decedent's estate through medical advancement or otherwise discovered the cause of the decedent's injuries that were suffered during his lifetime."

524 F.Supp. at 1191 n. 5 (emphasis original). *See also Trimper,* 501 A.2d at 453 (quoting *Johnson* ). Similarly, the court in *Pobieglo* reasoned:

> "To delay accrual of a claim until the decedent's personal representative might discover the cause of injury would create a situation where 'there seldom would be a prescribed and predictable

period of time after which a claim would be barred.' *Olsen v. Bell Tel. Laboratories, Inc., supra*, 388 Mass. [171], 175, 445 N.E.2d 609 [612 (1983) ]. The application of a postdeath discovery rule to survival actions would produce 'an unacceptable imbalance between affording plaintiffs a remedy and providing defendants the repose that is essential to stability in human affairs.' *Id.*"

521 N.E.2d at 733.

[¶ 15] Courts rejecting post-death application of the discovery rule also have noted that the decedent's death is itself a "community-disturbing event" which "is likely to prompt immediate focus by third parties upon the cause thereof." *Greene*, 843 So.2d at 163 (quoting *Cadieux v. International Tel. & Tel. Corp.*, 593 F.2d 142, 145 (1st Cir.1979)). The court in *Pastierik*, addressing application of the discovery rule to a wrongful death action, noted:

"As stated in *Anthony, supra*, 'death' is a 'definitely established event.' Upon the death of an individual, survivors are put on clear notice thereof, and they have the opportunity to proceed with scientific examinations aimed at determining the exact cause of death so that a wrongful death action, if warranted, can be filed without additional delay. Such examinations, including autopsies, are designed to make a final determination as to the cause of death, and they are not restrained or limited in their scope, as would be examinations of living persons, by the need to avoid intrusive or destructive examination procedures. Because death is not an event that is indefinite as to the time of its occurrence, and because survivors are immediately put on notice that they may proceed to determine the cause of death, there is no basis to regard the cause of action for death as accruing at any time other than at death."

526 A.2d at 326. The court concluded the same rationale applied in a survival action:

"In the context of survival actions, which, as heretofore discussed, merely permit a personal representative to pursue a cause of action that had already accrued to a victim prior to death, the *Pocono* [*Int'l Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983) ] rule causes the statute of limitations to commence to run on the date when the victim ascertained, or in the exercise of due diligence should have ascertained, the fact of a cause of action. In no case, however, can that date be later than the date of death; hence, the statute runs, at the latest, from death. Because death is a definitely ascertainable event, and survivors are put on notice that, if an action is to be brought, the cause of action must be determined through the extensive means available at the time of death, there is no basis to extend application of the discovery rule to permit the filing of survival actions, or wrongful death actions, at times beyond the specified statutory period."

*Pastierik*, at 327.

[¶ 16] In *Greene*, the court addressed application of the discovery rule to a survival personal injury claim under the Federal Employers' Liability Act ("FELA"), and provided a concise summary of the reasons for rejecting application of the discovery rule beyond the death of the injured person:

"The consistency with which the Court was concerned can be achieved only by holding that a FELA personal-injury claim must accrue no later than the day the employee dies. Otherwise, a wrongful-death action would accrue, pursuant to *Reading* [*Co. v. Koons*, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835 (1926) ], upon the death of the employee, but the personal-injury claim would accrue only

when the personal representative, *whenever* such individual could be identified and qualified, discovered, or should have discovered, the occupational nature of the illness.

"Such would be the result if we extended the discovery rule to personal representatives, as the plaintiffs propose. Under such a rule, liability for the *wrongful death* of an employee would be extinguished three years after the death of the employee, while liability for the *personal injury* of that same employee could be held *in abeyance indefinitely.* This result would be clearly contrary to the policies and doctrine expressed in *Reading,* as well as to logic. Indeed, there is something logically amiss in the notion that a cause of action for personal injury can 'accrue' decades after the employee, who has died, can neither discover, nor suffer, anything further.

"Moreover, '[t]he community-disturbing event of death is likely to prompt immediate focus by third parties upon the cause thereof, thereby eliminating one possible delay involved in assembling a personal injury case.' *Cadieux v. International Tel. & Tel. Corp.,* 593 F.2d 142, 145 (1st Cir.1979). Survivors routinely seek medical and legal advice in the event of death.... It is one thing to toll the limitations period while the employee lives. However, as CSX points out, 'extend[ing] the tolling of the statute of limitations until the death of the last surviving statutory beneficiary [under § 59]' could lead to absurd results. Brief of CSX, at 23. '[I]f there was living an infant dependent next-of-kin at the time the [employee] died, and if the personal representative did not discover the alleged cause of death until the infant was a senior citizen, there could be an effective tolling of sixty or more years.' *Id.* That this scenario is

more than theoretical is illustrated by Johnson's claims in this case, brought nearly *three decades* after her father's death. We conclude that death is sufficiently significant to trigger the accrual, not only of a cause of action for wrongful death, but also of a cause of action for personal injuries.

"Consequently, until the United States Supreme Court revisits *Reading,* we are compelled to hold that the ... discovery rule applies only to discovery by the railroad employees themselves, and not to discovery by the personal representatives of deceased railroad employees, bringing actions, pursuant to 45 U.S.C. § 59, for personal injuries allegedly incurred in the course of their employment."

843 So.2d at 162–63.

[¶ 17] In interpreting our survival statute, I find the logic and rationale of the foregoing authorities persuasive. I do not believe the legislature intended, in enacting N.D.C.C. § 28–01–26.1, to create a limitless time period after the decedent's death for survivors to bring actions which were not discovered during the injured person's lifetime. Accordingly, I would hold that the discovery rule does not toll the accrual of a survival cause of action brought under N.D.C.C. § 28–01–26.1 beyond the date of the decedent's death and that the survival cause of action accrues, at the latest, upon death.

[¶ 18] Allen Mertz died in 1996, and the survival cause of action accrued, at the latest, at that time. I would hold the six-year statute of limitations expired by at least 2002, and this survival action commenced in 2005 is barred by the statute of limitations. I would therefore affirm summary judgment dismissing Mertz's action.

[¶ 19] Finally, I am compelled to respond to assertions in Justice Maring's

separate opinion suggesting that I have confused the existence and the accrual of a cause of action, resulting in an unprincipled analysis of our law. North Dakota's survival statute provides:

"No action or claim for relief, except for breach of promise, alienation of affections, libel, and slander, abates by the death of a party or of a person who might have been a party had such death not occurred."

N.D.C.C. § 28–01–26.1. Stripped to its essentials for present purposes, the statute provides: "No action or claim for relief abates by death." According to common application, the word "abate" means "to put an end to ... nullify." *Merriam–Webster's Collegiate Dictionary* 2 (11th ed. 2005). Thus, death does not end or nullify an action or claim for relief.

[¶ 20] The word "claim" means "the aggregate of operative facts giving rise to a right enforceable by a court." *Black's Law Dictionary* 264 (8th ed. 2004). Similarly, the phrase "cause of action" is "a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Id.* at 235. The plain meaning of these terms indicate the concepts involved in this statute deal with the existence or nonexistence of a justiciable claim.

[¶ 21] Stated differently, the survival statute is existential—it deals with the existence of the claim. Once the operative set of facts come into being, i.e., all elements of a claim exist, the death of the party does not destroy the claim. For example, a justiciable claim for the tort of negligence comes into being once all four elements (duty, breach, causation and damages) come into existence. *See Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 8, 766 N.W.2d 458. Application of the survival statute means once a claim exists,

that claim does not cease to exist because of the death of the party.

[¶ 22] The discovery rule, like the statute of limitations, is not existential but temporal in nature. The statute of limitations does not deal with whether a claim exists, i.e., whether all of the elements have come into being. Instead, a limitations period deals with the date by which an existing claim must be presented to the Court. Like the statute of limitations, the discovery rule uses the concept of tolling to deal with the time when an existing claim must be brought before the Court. The word "toll" is defined as: "To annul or take away <toll a right of entry>, 2. (Of a time period, esp. a statutory one) to stop the running of; to abate <toll the limitations period>". *Black's Law Dictionary* at 1525.

[¶ 23] Justice Maring argues that, under the discovery rule, a claim for relief does not accrue and hence the statute of limitations does not begin running until a plaintiff has notice a potential claim exists. It is true that some decisions of this Court, including one I authored, have described the discovery rule in terms of accrual, i.e., that the claim for relief does not accrue until the discovery. *See, e.g., Dunford v. Tryhus*, 2009 ND 212, ¶ 9, 776 N.W.2d 539; *Snortland v. State*, 2000 ND 162, ¶ 11, 615 N.W.2d 574; *Wells v. First Am. Bank West*, 1999 ND 170, ¶ 10, 598 N.W.2d 834; *American Ins. Co. v. Midwest Motor Express, Inc.*, 554 N.W.2d 182, 187 (N.D. 1996); *Hebron Pub. School v. United States Gypsum Co.*, 475 N.W.2d 120, 120–21 (N.D.1991). However, this Court also has described the discovery rule as tolling the running of the statute of limitations after the claim for relief accrued. *See, e.g., Larson v. Norkot Mfg., Inc.*, 2002 ND 175, ¶ 9, 653 N.W.2d 33 ("We have adopted a discovery rule, which tolls the statute of limitations in malpractice actions until the

plaintiff knows, or with reasonable diligence should know, of the injury, its cause, and the defendant's possible negligence."); *Larson v. Norkot Mfg., Inc.*, 2001 ND 103, ¶ 10, 627 N.W.2d 386; *Jacobsen v. Haugen*, 529 N.W.2d 882, 885 (N.D.1995); *Osland v. Osland*, 442 N.W.2d 907, 909 (N.D. 1989). One decision of this Court cites cases describing the discovery rule both as "tolling" and as delaying "accrual" of the cause of action. *Schanilec v. Grand Forks Clinic, Ltd.*, 1999 ND 165, ¶ 13, 599 N.W.2d 253.

[¶ 24] Given this Court's conflicting descriptions, the assertion that my application of law lacks principle is unfounded. Also unfounded is a construction and application of our law that ignores and confuses the underlying concepts regarding the existence and the accrual of a cause of action. Rather, when the concepts embodied in the language of both the survival statute and the discovery rule are analyzed, I believe it is not this opinion but the other that confuses and improperly mixes the existential nature of the survival statute with the temporal nature of the discovery rule.

[¶ 25] STEVEN E. McCULLOUGH, D.J., concurs.

[¶ 26] The Honorable GARY H. LEE, D.J., and STEVEN E. McCULLOUGH, D.J., sitting in place of KAPSNER, J., and SANDSTROM, J., disqualified.

MARING, Justice, dissenting.

[¶ 27] I respectfully dissent from the majority opinion and would reverse the summary judgment and remand for further proceedings. I am of the opinion that the discovery rule applies to a survival cause of action and that there exists a genuine issue of material fact precluding summary judgment.

[¶ 28] The purpose of the discovery rule is "to balance the need for prompt assertion of claims against the policy favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it." *Wells v. First American Bank West*, 1999 ND 170, ¶ 9, 598 N.W.2d 834. In *Wells*, the issue was whether the discovery rule applies to a breach of contract action. *Id.* at ¶ 11. Our Court held that it did not apply to contract actions, because of " 'the range of our previous decisions applying a discovery rule in other actions ... and in light of legislation incorporating discovery rules in other statutes of limitations.' " *Id.* (quoting *Hebron Public School v. United States Gypsum Co.*, 475 N.W.2d 120, 124 (N.D.1991)). Our legislature has provided for a survival cause of action. N.D.C.C. § 28–01–26.1. Section 28–01–26.1, N.D.C.C., provides: "No action or claim for relief, except for breach of promise, alienation of affections, libel, and slander, abates by the death of a party or of a person who might have been a party had such death not occurred." The statute does not define when a claim for a survival cause of action accrues for purposes of commencing the running of the six-year statute of limitation period. "In the absence of such a definition it is a judicial function to determine when a cause of action accrues." *Hebron*, 475 N.W.2d at 121. Ordinarily, a statute of limitations begins to run " 'at the time of the act giving rise to the cause of action, not at the time of discovery of the act or its perpetrator.' " *Id.* at 122 (quoting 43 Cal. Jur.3d, *Limitation of Actions* § 22 (1978)). In *Hebron*, our Court noted that we have applied the discovery rule in a number of actions, including "medical malpractice cases, legal malpractice cases, assault and battery action based on sexual abuse when the plaintiff was a minor, actions involving asbestos, drugs, and medical products, ...

'tort by negligence,' reformation of a written instrument on the ground of mutual mistake[,] and reformation of a deed." *Id.* at 124 (citations omitted). We stated:

> The opening language in the statutes of limitation involved in all of the foregoing decisions of this court is the same: "The following actions must be commenced within ... years after the claim for relief or cause of action has accrued." *We perceive no principled basis upon which to distinguish this action* to recover the costs of removing asbestos from a building *from many of the cases in which this court has already applied a discovery rule.*

*Id.* at 124 (emphasis added). I can ascertain no principled basis upon which to distinguish this action to recover damages in a survival cause of action from the many cases in which this Court has already applied a discovery rule. Our legislature has specifically limited the application of the discovery rule in medical malpractice actions and wrongful death actions, stating:

> The following actions must be commenced within two years after the claim for relief has accrued:
>
> ....
>
> 3. An action for the recovery of damages resulting from malpractice; *provided, however, that the limitation of an action against a physician or licensed hospital will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or licensed hospital.* This limitation is subject to the provisions of section 28–01–25.
>
> 4. An action for injuries done to the person of another, when death ensues from such injuries, and the claim for relief must be deemed to have accrued at the time of the death of the party injured; *provided, however, that when death ensues as the result of malpractice, the claim for relief is deemed to have accrued at the time of the discovery of the malpractice. However, the limitation will not be extended beyond six years of the act or omission of alleged malpractice by a nondiscovery thereof unless discovery was prevented by the fraudulent conduct of the physician or hospital.*

N.D.C.C. § 28–01–18. In *Hebron,* 475 N.W.2d at 125 n. 1, we said:

> This statute [N.D.C.C. § 28–01–18] may reflect a legislative presumption that the discovery rule determines when a cause of action accrues except in those instances in which the Legislature specifies that the discovery rule is not applicable. The presumption that the discovery rule applies except where the Legislature specifies otherwise is consistent with the perception that the determination as to when a cause of action accrues is a judicial function in the absence of legislative definition of that term.

The legislature has not limited the application of the discovery rule in a survival cause of action.

[¶ 29] In *Hulne v. International Harvester Co.,* 322 N.W.2d 474, 475 (N.D.1982), our Court interpreted N.D.C.C. § 28–01–26 and concluded "[t]he statute of limitations that applies to an action which a person is entitled to bring also applies to that action when it is brought as a survival action by his representative upon his death." We rejected the interpretation that the two-year statute of limitations for wrongful death actions under N.D.C.C. § 28–01–18(4) applied to survival actions. *Id.* at 476. We adopted the reasoning of

the Alaska Supreme Court in *Sinka v. Northern Commercial Company*, 491 P.2d 116, 119 (Alaska 1971):

"In our view, *the survivorship statute, ... was not intended to shorten the specific statutory provisions governing a cause of action* but to extend the statutory period where it otherwise would have expired within a year after the death."

*Hulne,* 322 N.W.2d at 476 (quoting *Sinka,* 491 P.2d at 119) (emphasis added). Our Court further construed N.D.C.C. § 28–01–26 "to permit the commencement of a survival action at any time within one year from the decedent's death if the applicable statute of limitations period expires within one year from the decedent's death." *Hulne,* at 477. Our Court broadened the ability of a representative to recover from a wrongdoer under a survival action.

[¶ 30] There is no basis to differentiate between a survival cause of action and any other cause of action under our case law or statutes. The majority reasons that to apply the discovery rule would present the potential for infinite expansion of the time period for a survival action. Yet, our Court has long recognized the application of the discovery rule to personal injury actions. *See Hebron,* 475 N.W.2d at 124.

[¶ 31] Courts in other states support the position that the discovery rule applies to a survival action. The Supreme Court of Washington held that the discovery rule applied to toll the statute of limitations applicable to a survival action in *White v. Johns–Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687 (1985). The Washington survival statute provided:

"All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter ..."

*Id.* at 695 (quoting RCW 4.20.046(1)). The Supreme Court of Washington acknowledged that courts are split on this issue whether the discovery rule applies to survival actions. *Id.* Rejecting the rationales of those courts holding the discovery rule does not apply, the court reasoned:

Defendants confuse the existence of a cause of action and the accrual of a cause of action; while the plaintiff in the present case may have been injured by defendants during his life, his cause of action did not accrue unless he discovered, or should have discovered, the cause of his injuries. Since the decedent would have benefitted from the discovery rule had he not died, his representatives should likewise benefit from it.

*Id.* at 696 (citations omitted). The majority opinion in this case suffers from the same confusion.

[¶ 32] Application of the discovery rule to survival actions, also finds support in *Eisenmann v. Cantor Bros., Inc.,* 567 F.Supp. 1347 (N.D.Ill.1983). The court applied Illinois law in determining whether the discovery rule was applicable to a survival action. *Id.* at 1349. The wife, the administratrix of the estate of her deceased husband, brought a survival action alleging her husband developed chronic lymphocytic leukemia, which led to his death, because of exposure to benzine at his employment. *Id.* at 1348–49. The court concluded the Illinois Supreme Court had not expressly stated its view on whether the discovery rule applied under the Illinois Survival Act or the Wrongful Death Act. *Id.* at 1350. The court considered Illinois law and provided several reasons for its conclusion that the discovery rule applied to the Survival Act. First, it reasoned that the recovery under the survival action is for the personal injury to the decedent between his injury and his death and becomes part of the estate, sub-

ject to the obligation of the estate. *Id.* at 1351. Second, it noted that the survival cause of action was meant to fully compensate for the personal injuries sustained and to ensure wrongdoers were not relieved of some portion of their liability because their acts had caused death. *Id.* at 1351. Third, the court emphasized that the discovery rule is "the only fair means by which a statute of limitations can be applied in a case where an injury is both slowly and invidiously progressive." *Id.* at 1352–53. Finally, the court stated: "If, as is manifest, Mr. Eisenmann would have had the benefit of the discovery rule if he brought a tort action in his own name, neither policy nor logic will support a contrary result due to his death." *Id.* at 1353.

In *The Law of Torts*, Professor Dan B. Dobbs states:

> The discovery rule is now familiar in personal injury statute of limitations cases. It logically applies as well in survival actions, which are merely continuations of the personal injury claim, although there is some dissent. In the survival context, the main question is whether suit was brought within the prescriptive period after the decedent discovered or should have discovered the facts considered relevant in the particular jurisdiction.

2 Dan B. Dobbs, *The Law of Torts* § 300, 818–19 (2001).

[¶ 33] The majority cites several cases to support its conclusion that the discovery rule does not apply to extend the accrual of a survival action beyond the date of the decedent's death. The reasoning of the Pennsylvania Supreme Court in *Anthony v. Koppers Co.*, 496 Pa. 119, 436 A.2d 181 (1981), which is relied on in *Redeker v. Johns–Manville Prod. Corp.*, 571 F.Supp. 1160 (W.D.Pa.1983) and *Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987), has been criticized by Professor

Dobbs as "misconceiv[ing] the discovery rule, which does not deny the validity of a claim but only postpones the time for starting the statutory clock." *Id.* at 819 n. 6. Furthermore, *Anthony* is a plurality opinion with only three members of the Court agreeing in the rationale. 436 A.2d at 181. Finally, the Washington Supreme Court rejected the rationale of *Anthony* and *Redeker*, which it articulated as holding that as a matter of law a survival action is barred if the decedent did not discover the injury was caused by wrongful acts before he died. *White*, 693 P.2d at 695–96.

[¶ 34] In *Baumgart v. Keene Building Prod. Corp.*, 542 Pa. 194, 666 A.2d 238 (1995), the Supreme Court of Pennsylvania construed the application of the discovery rule to survival causes of action. The court was evenly divided (3–3) over the applicability of the discovery rule to toll the statute of limitations to the survival action. *Id.* at 239. In *Fine v. Checcio, D.D.S.*, 582 Pa. 253, 870 A.2d 850, 859 (2005), the Pennsylvania Supreme Court held the principles of law with regard to the discovery rule previously announced in *Baumgart* were overruled and that "it is not relevant to the discovery rule's application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." The Pennsylvania Supreme Court rejected the position that the discovery rule does not apply if the injury and its cause were reasonably ascertainable at any point within the prescribed statutory period. *Id.* at 859–60. These cases highlight the difficulties the Pennsylvania courts have encountered in applying their interpretation of the discovery rule and call into

question their applicability to North Dakota.

[¶ 35] The majority cites *McDaniel v. Johns–Manville Sales Corp.*, 511 F.Supp. 1241 (N.D.Ill.1981). This decision is analyzed and criticized in *Eisenmann*, 567 F.Supp. at 1353–54, and in *White*, 693 P.2d at 695–96. The Court in *McDaniel* articulates the same rationale as does the Pennsylvania Supreme Court in *Anthony*, which is that if the decedent has not discovered the injury was caused by wrongful acts before his death, the cause of action has not "accrued" before his death and therefore there is no action kept alive by the survival act.

[¶ 36] *Johnson v. Koppers Co.*, 524 F.Supp. 1182, 1187 (N.D.Ohio 1981), a case cited by the majority, construed two Ohio statutes of limitations, Ohio Revised Code, section 2305.10, for bodily injury actions and Ohio Revised Code, section 2125.02 for wrongful death actions. The Ohio Revised Code, section 2305.10, specifically stated that for claims involving bodily injury caused by exposure to asbestos, "the cause of action accrues either upon the date the *injured person is informed* by competent medical authority that he has been injured by such exposure, or upon the date on which the injured person should have become aware that he had been injured by such exposure." *Id.* at 1192 (emphasis added). Based on this specific statutory language, the court concluded that a survival action must accrue during the life of the injured person. *Id.* However, the Supreme Court of Ohio in 1998 held that the discovery rule can be used to extend the statutory period in which the decedent's survivors can commence an action for wrongful death overruling its prior decisions. *Collins v. Sotka*, 81 Ohio St.3d 506, 692 N.E.2d 581 (1998). This decision brings into question the validity of the *Johnson* case.

[¶ 37] *Greene v. CSX Transp.*, 843 So.2d 157, 160 (Ala.2002), presented the question whether the "latent-illness-discovery rule" applies to actions brought under a part of the Federal Employers' Liability Act for personal injuries suffered by employees of the railroad in the course of their employment. Relying on a United States Supreme Court decision, *Reading Co. v. Koons*, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835 (1926), the court concluded that to apply the discovery rule to a survival action "would be clearly contrary to the policies and doctrine expressed" in *Reading. Id.* at 163. The court noted until the United States Supreme Court revisited *Reading*, it was compelled to hold the "*Urie–Kubrick* discovery rule applies only to discovery by the railroad employees themselves . . ." *Id.; see Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). *Greene* is controlled by federal law.

[¶ 38] *Santos v. George Washington Univ. Hospital*, 980 A.2d 1070 (D.C.App. 2009) involved a medical malpractice survival action. Appellant's father fell in the hospital, was injured and later died. *Id.* at 1071–72. The hospital argued appellant's father knew of his injury, its cause and enough to support allegations of wrongdoing on the date he fell. *Id.* at 1074. The issue before the court was whose knowledge was relevant—appellant's or his deceased father's. *Id.* The court concluded that the decedent's knowledge is relevant and the statute of limitation begins to run either when the injured person ascertains the relevant facts or at death, whichever occurs first. *Id.* at 1075–76. The court relied on *Trimper v. Porter–Hayden*, 305 Md. 31, 501 A.2d 446, 457 (1985) and *McDaniel v. Johns–Manville Sales Corp.*, 511 F.Supp. 1241 (N.D.Ill.1981).

[¶ 39]   In *Pobieglo v. Monsanto Co.*, 402 Mass. 112, 521 N.E.2d 728 (1988), the court in a seven to three decision held that the discovery rule was inapplicable to a wrongful death action and an action for conscious suffering.  The court interpreted the Massachusetts statute referring only to claims which the decedent was "entitled to bring" to refer "to cases where the right of action accrued during the lifetime of decedent."  *Id.* at 732 (quoting *Sliski v. Krol*, 361 Mass. 313, 315, 279 N.E.2d 924 (1972)).  The court also reasoned that because the discovery rule did not apply to wrongful death actions, there was no reason to apply it to a claim for conscious suffering.  *Id.* at 733.

[¶ 40]   In *Trimper*, 501 A.2d at 447, the court held the discovery rule does not apply to a wrongful death action or a survival action and that the two separate time bars began to run at death.  In survival actions, the statute of limitations is measured from the date of accrual of the cause of action.  *Id.* The court concluded that because the "General Assembly has already determined that liability under the wrongful death statute should not remain open more than three years after death," to apply the discovery rule to "survival actions would be inconsistent with the policy underlying that legislative determination."  *Id.* at 456. This case was abrogated in part by the Maryland legislature the next year when it revised its wrongful death statute.  *See Georgia–Pacific Corp. v. Benjamin*, 394 Md. 59, 904 A.2d 511, 522 (2006).

[¶ 41]   In *Georgia–Pacific Corp. v. Benjamin*, 904 A.2d at 511, the court decided the applicability of the discovery rule to both wrongful death and survival actions relating to occupational diseases.  Holding that the 1986 statutory changes to its wrongful death statute no longer precluded the application of the discovery rule, it held it was applicable to occupational disease related claims for wrongful death. *Id.* at 529.  It further held that the discovery rule applied to survival actions based on a claim that death was caused by occupational disease.  *Id.* at 533.

[¶ 42]   In summary, I find the rationales advanced by the cases cited by the majority either unpersuasive or inapplicable in North Dakota under our statutes and prior case law.  I do not agree with those courts' interpretation of "accrues" which is that the decedent must have discovered the cause of action before his death and, if he did not, that as a matter of law and policy it "accrued" at his death.

[¶ 43]   In *Sheets v. Graco, Inc.*, 292 N.W.2d 63, 66–67 (N.D.1980) (citations omitted), our Court explained the difference between a wrongful death claim and a survival claim:

> Conceptually, survival actions are quite different from wrongful death actions.   Each provides a separate and distinct remedy for a different kind of loss. . . . Survival statutes, on the other hand, are remedial in nature, and are intended to permit recovery by the representatives of the deceased for damages the deceased could have recovered had he lived.   A survival action merely continues in existence an injured person's claim after death as an asset of his estate, while a wrongful death action is an entirely new cause of action for the benefit of those persons who bear a close relationship to the deceased and who have suffered injury as a result of his wrongful death.

The deceased, in this case, would have been entitled to bring his action on his tort claim for damages in 2005 based on the discovery rule.  I can discern no reason why his representative cannot do the same.  This is the result reached in the better reasoned cases.

[¶ 44]  I would affirm the trial court's decision that the discovery rule applies to a survival action.  However, that does not end my analysis, because the trial court decided as a matter of law that the facts indicated the deceased knew or should have known his cancer was caused by asbestos in 1995.  My review of the record indicates there is a genuine dispute of material fact on this point.  The evidence submitted is sufficient to generate a genuine issue because, although the medical records indicate that exposure to asbestos "could be the underlying etiological factor of his condition," there is nothing that indicates this information was ever provided to Mertz or his wife Shirley.  There is a handwritten note dated March 5, 1996, in the Medical Arts Clinic P.C. records indicating that Mertz's daughter requested a letter stating his diagnosis and his exposure to asbestos, but the appellees cannot point to any evidence that establishes such a confirmatory letter was ever provided to the daughter.  Even if such a letter exists, there is no evidence either Allen Mertz or Shirley Mertz was aware of it.  I am of the opinion that the trial court erred in granting summary judgment and that a fact issue remains whether Allen or Shirley Mertz had received information sufficient to put them on notice of a potential claim for personal injury caused by asbestos.

[¶ 45]  I would affirm the trial court's application of the discovery rule to the survival cause of action and reverse its summary judgment on the ground that there is a genuine issue of material fact and remand for further proceedings.

[¶ 46]  GERALD W. VANDE WALLE, C.J., concurs.

LEE, District Judge, concurring and dissenting.

[¶ 47]  I agree with the result reached by Justice Maring and would reverse the Summary Judgment of the trial court.  I would do so because there exists an issue of material fact concerning when Allen Mertz, or his survivors, discovered the possible cause of his terminal illness, exposure to asbestos.

[¶ 48]  This is a survival action brought pursuant to N.D.C.C. § 28–01–26.1.  For purposes of this appeal, the parties have agreed that the six-year statute of limitations under N.D.C.C. § 28–01–16(5) applies.  It is also argued that the discovery rule applies.  That rule postpones the accrual of a cause of action until the plaintiff is placed on notice that a potential claim exists in cases where it would be difficult for the plaintiff to have learned of the negligent act or omission giving rise to the injury.  *Wells v. First American Bank West*, 1999 ND 170, ¶¶ 9–10, 598 N.W.2d 834.  There exists in this case a material issue of fact as to when the plaintiff discovered, or reasonably should have discovered the possible cause of Allen Mertz's cancer.  That discovery could have been made as early as 1995, even before Allen Mertz's death, or it could have occurred as late as April 2003, when the Mertz family received a medical opinion about the possible cause of death of Allen Mertz.  Because this issue of material fact exists, Summary Judgment should not have been granted.  N.D.R.Civ.P. 56.

[¶ 49]  I cannot join in the opinion of Justice Crothers on the issue raised by him at ¶ 10, that is, may the discovery rule be applied to extend the time of the accrual of a survival action beyond the date of the death of the decedent?  He determines that it does not.  *See* Majority Opinion at ¶ 17.

[¶ 50]  Nor can I join that portion of Justice Maring's opinion which examines the same question, and reaches the oppo-

site conclusion. *See* Maring, J., dissent at ¶ 42.

[¶ 51] It is not because I cannot be persuaded to join one opinion or the other. Both opinions are thoughtful, well-reasoned, and forceful. I will not join either opinion because after a review of the record below, and the trial court's Memorandum and Order, this issue was neither presented to the trial court, nor did the trial court make a ruling on this issue. The lack of a ruling on this issue by the trial court is conceded by 999 Quebec, Inc. "The district court did not reach the issue of whether a survival action may accrue subsequent to the death of the injured party." Appellee's brief at ¶ 4.

[¶ 52] An opinion on the ultimate date of the statute of limitations is not necessary to decide this appeal. The trial court's ruling was predicated on the factual determination that Allen Mertz and his family had sufficient knowledge in 1995 that his cancer was due to asbestos exposure. This Court should limit its decision in this appeal to the issue presented, argued, and determined by the trial court. The issue is whether the trial court can properly make this factual determination on the Summary Judgment motion made by the defendants/appellees.

[¶ 53] This Court has long held that issues which are not necessary to the determination of an appeal should not be considered. "Questions, the answers to which are not necessary to the determination of an appeal, need not be considered. Consequently, it is neither necessary nor appropriate for us to address these issues in this appeal." *City of Fargo v. Ness,* 529 N.W.2d 572, 577 (N.D.1995) (internal citation omitted). The question of the ultimate running of the applicable statute of limitations is not needed to resolve this appeal.

[¶ 54] Further, this Court only considers issues properly presented to the trial court. *In re Hirsch,* 2009 ND 135, ¶ 12, 770 N.W.2d 225 ("It is axiomatic that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal."). If a party fails to properly raise or argue issues in the trial court, that party is precluded from raising the argument on appeal. *Id.* A review of the Appendix submitted with this appeal shows that the issue of the ultimate running of the statute of limitations was not raised in the trial court. The unraised issue should not now become the cornerstone of an opinion in the Supreme Court.

[¶ 55] "It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Davis v. Enget,* 2010 ND 34, ¶ 10 (quoting *Messer v. Bender,* 1997 ND 103, ¶ 10, 564 N.W.2d 291). If the trial judge is to be reversed, let it be for a ruling that the trial judge made on the issues presented, and not for some other reason.

[¶ 56] I would reverse because granting Summary Judgment was improper given the material issues of fact presented.

[¶ 57] Gary H. Lee, D.J.

PER CURIAM.

[¶ 58] We write separately to explain our understanding of the status of this case on remand to the trial court in light of the three separate opinions which have been filed in this matter.

[¶ 59] Justice Crothers' opinion, which Judge McCullough has signed, would affirm the judgment of the District Court because, as a matter of law, the discovery rule does not toll the accrual of a survival action brought under N.D.C.C. § 28–01–26 beyond the date of the decedent's death,

and the survival action accrues, at the latest, upon death. This action commenced in 2005, Allen Mertz died in 1996, the survival cause of action accrued, at the latest, at that time, and would therefore be barred by the statute of limitations.

[¶ 60] Justice Maring's opinion, which Chief Justice VandeWalle has signed, would reverse the judgment, concluding the discovery rule does apply to extend the accrual of a survival action brought under N.D.C.C. § 28-01-26 beyond the date of the decedent's death and there is a genuine issue of material fact as to when Allen or Shirley Mertz received information sufficient to put them on notice of a potential claim for personal injury caused by asbestos.

[¶ 61] Judge Lee agrees with Justice Maring's opinion that an issue of material fact exists concerning when Allen Mertz, or his survivors, discovered the exposure to asbestos was the possible cause of Allen Mertz's terminal illness and would reverse the judgment on that ground alone. Judge Lee would not decide whether or not the discovery rule extends the accrual of a survival action brought under N.D.C.C. § 28-01-26 beyond the date of the decedent's death.

[¶ 62] Therefore, there are not three votes to determine whether or not the discovery rule applies to extend the accrual of a survival action brought under N.D.C.C. § 28-01-26 beyond the date of the decedent's death. There are three votes to reverse and remand the matter for trial on the issue of when there was notice the exposure to asbestos was the possible cause of Allen Mertz's terminal illness. As a result, we understand that on remand trial will be held on the merits of the plaintiffs' claims and on all defenses, including when there was notice exposure to asbestos was the possible cause of Allen Mertz's terminal illness, the statute of limitations, and the application of the discovery rule.

[¶ 63] GERALD W. VANDE WALLE, C.J., STEVEN E. McCULLOUGH, and GARY H. LEE, D.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.